# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSEPH ANTHONY FAVORS, | Civil No.  13-428 (JRT/LIB) |
| Plaintiff, | |
| v. | |
| MICHELLE HOOVER, LUCINDA JESSON, DANIEL STORKAMP, DENNIS BENSON, JEANINE HEBERT, LORI SWANSON, RALPH SCHMIDT, MANDY TORGERSON, ROB ROSE, DIANNA MAGAARD, DEB JAMES, JULI ROSE, BETH VIRDEN, JOANN FABIAN, JEFFREY L. PETERSON, DEBORAH J. SCHADEGG, CHRISTOPHER BORELAND, MARK MEHL, JOHN KING, ANN LINKERT (ZIMMERMAN), JEAN SEYKORA, THOMAS LUNDQUIST, CHAD MESOJEDEC, TODD WHITE, (O.D.) GULLICKSON, TERRY KNIESEL, JAMIE KOZISCH, TRACY GEBHART, CRAIG BERG, STEVE YOUNGST, JON HIBBER, KEVIN SCHLERER, JENA JONES, RICK O'CONNER, EYVETTE ANDERSON, OFFICE OF HEALTH FACILITY COMPLAINTS, DHS OFFICE OF MALTREATMENT COMPLAINTS, OFFICE OF LICENSING FOR THE SECURITY HOSPITAL, THE STATE OF MINNESOTA, and REBBECA RANEM, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Joseph Anthony Favors, No. 100988, Minnesota Correction Facility - Moose Lake, 1111 Highway 73, Moose Lake, MN  55767, *pro se*.

Angela Helseth Kiese, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, St. Paul, MN 55101, for defendant Michelle Hoover.[1]

Anthony R. Noss and Ricardo Figueroa, Assistant Attorneys General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for "State Defendants" Eyvette Anderson, Craig Berg, Tracy Gebhart, (O.D.) Gullickson, Jon Hibber, Deb James, Jena Jones, Terry Kniesel, Jamie Kozisch, Ann Linkert (Zimmerman), Thomas Lundquist, Dianna Magaard, Chad Mesojedec, Rick O'Conner, Rebbeca Ranem, Juli Rose, Rob Rose, Kevin Schlerer, Ralph Schmidt, Lori Swanson, Mandy Torgerson, Beth Virden, Todd White, Steve Youngst, Jeanine Hebert, Jean Seykora, Daniel Storkamp, Lucinda Jesson, Office of Licensing for the Security Hospital, DHS Office of Maltreatment Complaints, and State of Minnesota.

Anthony R. Noss and Ricardo Figueroa, Assistant Attorneys General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendant Dennis Benson.

Kelly S. Kemp, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for defendants Joann Fabian, Jeffrey L. Peterson, Deborah J. Schadegg, John King, and Office of Health Facility Complaints.

Jeffrey A. Timmerman, Assistant County Attorney, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN 55033, for defendants Christopher Boreland and Mark Mehl.

Plaintiff Joseph Anthony Favors is civilly committed at the Minnesota Sex Offender Treatment Program ("MSOP") in Moose Lake, Minnesota. On February 21, 2013, Favors filed a complaint under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 alleging various civil rights violations and naming fifty-six individuals and state agencies as defendants, sixteen of which were later dismissed. Defendants Hoover, Boreland, Mehl,

---

[1] For the sake of simplicity, the Court uses the same spelling for each defendant's name that the Plaintiff uses in his complaint. The same spelling is used in the electronic docket.

Benson, and the "State Defendants" all filed motions to dismiss Favors's federal claims against them. On May 13, 2014, United States Magistrate Judge Leo I. Brisbois issued a Report and Recommendation ("R&R") recommending the Court deny Favors's motion for default judgment against Boreland and Mehl. On that same date, Judge Brisbois issued a second Report and Recommendation, recommending the Court grant all four motions to dismiss without prejudice and decline to exercise supplemental jurisdiction over the state law claims. Favors objected to the second R&R on various grounds. Because, even considering his objections and especially in light of *Heck v. Humphrey*, 512 U.S. 477 (1994), Favors has failed to state a plausible civil rights claim on which relief may be granted, the Court will adopt both R&Rs, dismiss Favors's claims against Hoover, Boreland, Mehl, Benson, and the State Defendants without prejudice, and decline to exercise supplemental jurisdiction over Favors's state law claims.

## BACKGROUND

### I.     CIVIL COMMITMENT AND PAROLE REVOCATION

Favors is currently civilly committed as a "sexually dangerous and . . . sexually psychopathic person" at MSOP in Moose Lake. (Compl. ¶ 21, Feb. 21, 2013, Docket No. 1.) In 2008, Favors was serving a prison sentence for a criminal sexual conduct conviction with the Minnesota Department of Corrections ("DOC") in Stillwater. *Favors v. Jesson*, No. 13-cv-108 (JRT/LIB), 2013 WL 4052668, at *1 (D. Minn. Aug. 9, 2013). The Dakota County District Court ordered Favors civilly committed in August 2008 and the Minnesota Court of Appeals affirmed the commitment. *In re Civil Commitment of*

*Favors*, No. A09-2306, 2010 WL 2486349, at *9 (Minn. Ct. App. June 22, 2010); (Order Partially Dismissing Habeas Pet. & Changing Venue ("Habeas Order"), Ex. 48, at 103[2], Oct. 31, 2013, Docket No. 106-3.) On November 25, 2008, the Minnesota Department of Corrections imposed on Favors conditional supervised release from his prison sentence, so that he could be civilly committed at MSOP. (*Id.*) The release period was initially set to run through February 22, 2011. (*Id.*) Favors's release was predicated on twenty-nine conditions, including that he would not stalk or harass others. (*Id.* at 104.)

Favors's suit against Hoover and some fifty-five other individuals and state entities primarily arises out of his parole revocation and imprisonment for stalking Hoover at MSOP. (Compl. ¶ 2.) Favors makes many other allegations, including that he was subjected to punitive confinement; a counter-therapeutic environment; inadequate treatment; retaliation; interference with and threats of punishment related to complaints; retaliatory isolation, discharge from treatment, and imprisonment; a retaliatory criminal charge; cruel and unusual abuses; loss of personal property and wages, and lack of access to the courts. (*Id.* ¶¶ 100-02, 103-95, 196-204, 205-14, 229-66, 267-70, 330, 434-36, 439-43.) He also alleges that MSOP officials, and other related state officials, failed to properly supervise and train MSOP employees like Hoover. (See, e.g., id. ¶¶ 23, 25-27, 38-41, 43, 47-49, 75-77.)

Favors's allegations focus on his interactions with Hoover, a MSOP Security Counselor, during part of his time at the facility. (*Id.* ¶ 42.) Starting in December 2009,

---

[2] All page numbers refer to the CM/ECF pagination unless otherwise noted.

Favors began to make allegations that Hoover was having an inappropriate sexual relationship with a person civilly committed at MSOP, Michael Crow.  (Habeas Order, Ex 48 at 104; Compl. ¶ 112.)  Favors alleges that starting on December 8, 2009, in response to his allegations, Hoover made ten retaliatory and false reports against him.  (Compl. ¶¶ 42, 103-28, 130-33, 150-55, 165-83, 187-95.)  Favors claims that in these reports, Hoover falsely stated that Favors treated other patients, particularly Crow, poorly, broke MSOP rules, and was stalking and harassing Hoover.  (*Id.*)

At the same time, Favors filed multiple complaints against Hoover with the Office of Special Investigations ("OSI") for MSOP, along with other officials, refuting accusations she made in her reports, and claiming both that she was having an inappropriate relationship with Crow and that she was filing false reports and retaliating against Favors because he was reporting her inappropriate behavior.  (*E.g.*, Compl. ¶¶ 44-45, 111-12, 115, 118, 122, 129, 133, 134-38, 144-49, 153, 156-64, 168.)  His complaints were frequently detailed; his January 8, 2010 complaint, for example, contained multiple supporting affidavits from other MSOP patients, one of whom took and passed a polygraph test.  (*Id.* ¶ 129.)  He alleges, however, that the officials who received his complaints did nothing to investigate his allegations, particularly his March 12, 2010 complaint that urged OSI officials to watch security camera footage that Favors claims refutes Hoover's stalking allegations.  (*Id.* ¶¶ 175-76.)

In her tenth report on Favors, filed in May 2010, Hoover recommended he be placed on an Individual Program Plan ("I.P.P.").  (*Id.* ¶¶ 187-95.)  The I.P.P., initiated on May 26, 2010, restricted his access to recreation and education activities between noon

and 9:00p.m., when Hoover was working in those areas of the MSOP facility. (*Id.*; Individual Program Plan Method, Ex. 35, Oct. 31, 2013, Docket 106-3.) Following the I.P.P., Defendant Deborah Konieska, who has since been dismissed from this suit, authored Favors's Quarterly Treatment Review Report ("QRR"), which was completed on June 10, 2010. (Quarterly Treatment Review Report, Ex. 40, Oct. 31, 2013, Docket 106-3.) The QRR accused Favors of targeting "several female security counselors and group facilitators," submitting requests that female staff members be disciplined when he disagrees with their feedback, making "false allegations" against Hoover, and consistently following and observing Hoover and filing new complaints about her, despite being told to stop. (*Id.* at 42.)

In response to the I.P.P., and in addition to the other complaints he had filed with the OSI, Favors filed a complaint with the Hospital Review Board ("HRB") on January 23, 2012, alleging that the I.P.P. was retaliatory. (Compl. ¶ 201.) He also appeared before the HRB in April 2010 and filed a different complaint with the HRB in June 2010. (Hospital Review Board Compl., Ex. 43(2), Oct. 31, 2013, Docket 106-3.) In one of his HRB complaints, he challenged the QRR. (Compl. ¶ 217; Formal Compl., Ex. 41, Oct. 31, 2013, Docket No. 106-3.) Favors alleges the QRR was false and retaliatory. (Compl. ¶¶ 215-28.)

Following his June 2010 complaint, the HRB directed MSOP to respond, (Findings and Recommendations of the HRB, Ex. 43(1), Oct. 31, 2013, Docket No. 106-3), and Dennis Benson, MSOP's director, responded on July 29, 2010 that Favors needed to work toward his treatment plan goals and that his allegations regarding staff

misconduct had been received and investigated, (Resp. to HRB Recommendations, Ex. 38, Oct. 31, 2013, Docket 106-3; Compl. ¶¶ 205-07).   The response also stated that Favors had been told "to stop reporting false allegations and harassing staff" and that future such behavior could lead to him receiving "Behavior Expectations Violations." (Resp. to HRB Recommendations, Ex. 38, Oct. 31, 2013, Docket 106-3.)

On the same date that the QRR was issued, June 10, 2010, Favors was placed in isolation in a High Security Area ("HSA"), so that MSOP could conduct a criminal investigation into claims that Favors was stalking Hoover.  (Compl. ¶¶ 229-40.)  At that point, Favors alleges he was discharged from sex offender treatment at MSOP, through March of 2011.  (*Id.* ¶ 240.)  Favors was informed that he had violated the conditions of his supervised release by engaging in stalking and harassing behaviors.  (Habeas Order, Ex. 48, at 105.)   The Hearings and Release Unit of the Minnesota Department of Corrections held a parole revocation hearing on August 23, 2010.   (Compl. ¶ 253.) Favors alleges that Hoover testified falsely at the hearing that Favors had stalked her and that she did not have an inappropriate relationship with Crow.  (*Id.* ¶¶ 253-62.)  Favors alleges that Defendant Dianna Magaard also testified falsely at the hearing.  (*Id.* ¶¶ 210-14.)

Following the hearing, the revocation hearing officer, Deborah Schadegg, revoked Favors's parole and he was then transferred back to the DOC in Stillwater.  (*Id.* ¶¶ 263, 267; Habeas Order, Ex. 48, at 106.)   The imprisonment term was set to last until February 11, 2011.  (Compl. ¶ 263.)  Favors appealed the parole revocation, but Hearings and Release Unit Executive Officer Jeffrey Peterson affirmed the revocation.  (Habeas

Order, Ex. 48, at 106.)   A criminal complaint was initially filed against Favors for stalking Hoover, which resulted in Favors having to make a trip to the Carlton County District Court in chains and shackles.  (*Id.* ¶¶ 267-70.)  That complaint was dropped in the "interests of justice."  (Mot. & Order for Dismissal Without Prejudice, Ex. 58, Oct. 30, 2013, Docket No. 106-3.).

Favors alleges that in October 2010, Crow also faced parole revocation due to having a weapon in the MSOP facility.  (Compl. ¶ 276.)  Favors claims that Crow made a deal to inform Defendant Jungers about his relationship with Hoover, in order to avoid having his parole revoked.  (*Id.*)  Hoover was terminated from MSOP on October 15, 2010 and a criminal complaint was filed against her on May 9, 2011, alleging that she introduced contraband – marijuana – into the MSOP facility at Moose Lake and engaged in third-degree criminal sexual conduct.[3]  (*Id.* ¶¶ 274, 282-83; *see also* Habeas Order, Ex. 48, at 107.)   Favors concludes that the charges against Hoover are the most compelling proof available of his various claims and show indifference on the part of the officials he is suing since nobody sought his release after Hoover was terminated. (Compl. ¶¶ 285-92.)  Upon his release from the Minnesota Correctional Facility in Stillwater, Favors was transferred back to MSOP at Moose Lake.  (*Id.* ¶¶ 293-95.)

---

[3] The state court dismissed all three charges on November 10, 2011.  *State v. Hoover*, No. A12-1626, 2013 WL 1859098, at *1 (Minn. Ct. App. May 6, 2013).  The state later filed a new complaint against Hoover, charging her with two counts of introducing contraband into MSOP.  *Id.*  Hoover ultimately pled guilty to introducing alcohol into MSOP, in exchange for dismissing the marijuana-related contraband charge.  *Id.*

## II.    FAVORS'S HABEAS PETITIONS

Four days before his release from Stillwater, Favors filed a petition for writ of habeas corpus in Washington County District Court.  *Favors*, 2013 WL 4052668, at *1. He sought release from his confinement with the DOC in Stillwater and discharge from his civil commitment with MSOP.  *Id.*  Respondents erroneously filed their response with the wrong court, the Carlton County District Court (the county in which Moose Lake is located).  *Id.*  The Carlton County District Court then dismissed Favors's constitutional challenge on the merits.  *Id.*  The Washington County court partially dismissed the petition.  It dismissed his request for release from the custody of the DOC in Stillwater because he was no longer in custody there and had been returned to Moose Lake. (Habeas Order, Ex. 48, at 108-09.)  The remainder of his habeas claims – including his retaliation claims and the challenge to the revocation of his supervised release – were transferred to the Carlton County District Court.  (*Id.* at 109.)  The Washington County court stated the following, however:

> Petitioner has served his time and is no longer subject to DOC custody, as Petitioner's criminal sentence ended on February 11, 2011, and is therefore no longer subject to supervised or conditional release.  He may be entitled to a change in the record or in credit to be applied to any future sentence or some such remedy given the total picture of what happened here.  At a minimum he is entitled to have the Respondents and any other staff person or tribunal member receive a copy of this order so that if they [are] capable of "lessons learned" about animus, misplaced or premature conclusions, or other bias they can take the lesson to heart.
>
> It appears that Petitioner may have been engaging in inappropriate behaviors, but the so-called "unfounded" claims about Respondent Hoover now have merit to warrant her arrest and current prosecution for inappropriate behaviors with clients at MSOP – Moose Lake.  Hoover's reports about Petitioner's behavior came at the same time, or shortly very

after, Petitioner was making these accusations against Hoover. Given the sequence of events leading to revocation of Petitioner's conditional release, Petitioner may very well have a cognizable retaliation claim. The retaliation is now part of Petitioner's record and could adversely affect any future proceedings, which means that the revocation could have collateral consequences for Petitioner in the future.

. . . .

Even though the Court is dismissing Petitioner's Habeas Petition with respect to his confinement in Stillwater prison, the Court also notes that Petitioner is not precluded from pursuing an action under 42 U.S.C. [§] 1983.

(*Id.* at 108-09.)

The Minnesota Court of Appeals affirmed the Washington County order partially dismissing the habeas petition and transferring the remainder of the petition to Carlton County. *Favors v. Jungers*, Nos. A11-2055, A11-2104, 2012 WL 2079848, at *3-4 (Minn. Ct. App. June 11, 2012). It vacated, however, the prior Carlton County court order, since that court did not have the authority to dismiss a habeas petition filed in Washington County. *Id.* at *3. The Carlton County District Court has yet to rule on Favors's habeas petition.[4]

## III.    THIS PROCEEDING

On February 21, 2013, Favors filed his complaint in this case against some fifty-six individual and institutional defendants. (Compl.) The Court subsequently dismissed sixteen defendants. (Mem. Opinion & Order, Dec. 12, 2013, Docket No. 167; Order,

---

[4] As of September 26, 2014, the *Favors v. Boreland, et al.*, Carlton County, Dist. Ct. File No. 09cv-11-2276, was still pending.

Feb. 4, 2014, Docket No. 202.)  In his complaint, as discussed above, Favors alleges that defendants committed a number of wrongs, including wrongful and retaliatory imprisonment, retaliation, and inadequate treatment.  Favors alleges violations of his First, Fourth, and Fourteenth Amendment rights under the United States Constitution, along with his Minnesota constitutional rights.  (Compl. ¶¶ 387-91.)  He also alleges violations of various state statutes, rules, and MSOP policies.  (*Id.* ¶¶ 378-86, 392-431.) He seeks monetary and injunctive relief, costs, and attorneys' fees.  (*Id.* ¶¶ 432-87.)

Defendants Hoover, Boreland, Mehl, Benson, and the "State Defendants" all filed motions to dismiss Favors's federal claims against them.  (Def. Hoover's Mot. to Dismiss, Jan. 27, 2014, Docket No. 195; Dakota County's Mot. to Dismiss, Nov. 15, 2013, Docket No. 139; Def. Benson's Mot. to Dismiss, Nov. 15, 2013, Docket No. 132; State Defendants' Mot. to Dismiss, Oct. 21, 2013, Docket No. 88.)  The Office of Health Facility Complaints and employees of the DOC did not file a motion to dismiss but did file their own answer.  (Answer, Oct. 18, 2013, Docket No. 87.)  Favors also filed a motion for default judgment against Boreland and Mehl.  (Mot. for Default J., Nov. 14, 2013, Docket No. 143.)

On May 13, 2014, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending the Court deny Favors's motion for default judgment against Boreland and Mehl.  (R&R ("Default Judgment R&R"), May 13, 2014, Docket No. 207.) On that same date, the Magistrate Judge issued a second Report and Recommendation, recommending the Court grant all four motions to dismiss without prejudice and decline to exercise supplemental jurisdiction over the state law claims.  (R&R.)  Favors filed

objections, focusing on the second R&R.[5]   (Objections to R&R ("Objections"), May 29, 2014, Docket No. 210.)

## DISCUSSION

## I.   STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations."   Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).   "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."   Fed. R. Civ. P. 72(b)(3).

## II.   GENERAL OBJECTION

Favors first objects, generally, to the Magistrate Judge's recommendation to dismiss his claims, arguing that a complaint should be construed liberally in the plaintiff's favor.   (Objections at 3-4 (quoting *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003)).)   While a *pro se* plaintiff's complaint should be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the complaint also must still "allege sufficient facts to support the claims advanced," *Stone v. Harry*, 364 F.3d 912, 914

---

[5] Favors filed his objections on May 29, 2014, two days after the May 27, 2014 deadline. D. Minn. LR 72.2(b)(1).   Favors also states that his objections contain 12,000 words, citing to Local Rule 7.1.   (LR 7.1(c) Word Count Compliance, May 29, 2014, Docket No. 210-1.)   But the applicable word limit is the 3,500 word limit on objections found in Local Rule 72.2(c)(1)(A). Because the defendants are not prejudiced by these deficiencies and because the Court has ultimately decided to overrule Favors's objections on the merits, the Court will accept the objections despite these rule violations.

(8th Cir. 2004).   Indeed, the Supreme Court requires a complaint to contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Moreover, the facts pleaded must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*   The Court concludes that the Magistrate Judge articulated and applied the correct standard for assessing a complaint and overrules Favors's objection that the R&R did not apply a sufficiently liberal construction to the complaint.

## III.   ELEVENTH AMENDMENT IMMUNITY

In his second objection, Favors objects to the Magistrate Judge's Eleventh Amendment analysis, arguing that the Eleventh Amendment only applies to the state institutional defendants, that his damages claims are allowed against state officials because he is suing all of them in their individual capacities (for damages), and that qualified immunity provides no defense because they have all violated Favors's clearly established federal rights.   (Objections at 4-5.)   The Court overrules this objection because the Magistrate Judge's Eleventh Amendment analysis is not to the contrary.

The R&R accurately recounts the state of Eleventh Amendment sovereign immunity law.   (R&R at 11-12.)   "The Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state."  *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).   There are

limited exceptions to the Eleventh Amendment bar on suits against states and state officials (in their official capacity); most obviously the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), that allows a private party to "sue a state officer in his official capacity **to enjoin a prospective action** that would violate federal law." *Id.* (emphasis added). The *Ex Parte Young* doctrine does not allow a plaintiff to sue a state or state officials in their official capacity for damages, however. *Id.* A suit against state officials for damages, suing them **in their individual capacities** (i.e., the damages would not be paid by the state's treasury), may be allowed. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). But a state official sued in his or her individual capacity may be entitled to qualified immunity, unless the official violated a constitutional right of the plaintiff and that right was "clearly established." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (internal quotation marks omitted).

The R&R simply clarifies that the Eleventh Amendment bars suits against states, state agencies, and officials and, to the extent the complaint can be read to seek damages from state officials sued in their official capacities, or otherwise violate the Eleventh Amendment's bar on suits against states, those claims should be dismissed. (R&R at 12.) It does not attempt to use the Eleventh Amendment to bar suits against state officials when sued in their individual capacities. Favors's objections to the Magistrate Judge's Eleventh Amendment analysis are overruled.

## IV.   *HECK V. HUMPHREY* DOCTRINE

### A.   Claims Against Hoover

Favors next objects, in his third objection, to the Magistrate Judge's recommendation that the Court dismiss Favors's 42 U.S.C. § 1983 claims against Hoover.   (Objections at 5-7.)   The recommendation is based on the "favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994)." *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007).   The Court in *Heck* "held that 'in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Id.* (quoting *Heck*, 512 U.S. at 486-87).   A plaintiff must satisfy this favorable-termination requirement even if he is no longer incarcerated and, as a result, cannot obtain habeas relief.  *Id.*

In *Entzi*, the court held that, under *Heck*, a Section 1983 plaintiff would have to meet the favorable-termination requirement when "challenging the duration of his imprisonment or the loss of sentence-reduction credits." *Id.* ("If [plaintiff's] challenge to the State's decision on sentence-reduction credits were to succeed, it 'would necessarily imply the invalidity of his conviction or sentence.'" (quoting *Heck*, 512 U.S. at 487)).   In other words, a plaintiff making such a challenge would need to seek habeas relief, or, if

- 15 -

the plaintiff had been released and habeas relief was not available, one of the other types of relief listed above, before asserting a constitutional claim in federal court. *Id.*

The crux of Favors's claims against Hoover is that her retaliatory reports and false testimony led to his parole revocation and imprisonment. (*See, e.g.*, Compl. ¶ 253.) The *Heck* favorable-termination requirement applies to Favors's challenge to his parole revocation and imprisonment. *See Marlowe v. Fabian*, 676 F.3d 743, 745-47 (8th Cir. 2012). And, as the R&R correctly noted, Favors has not met the favorable-termination requirement regarding his parole revocation. (R&R at 16-17.) The Washington County District Court decision may include dicta sympathetic to Favors's cause, but the court did not rule on the merits of Favors's claims. *Marlowe*, 676 F.3d at 747 (concluding that a Minnesota Court of Appeals decision that remanded the plaintiff's "habeas claim to the trial court" "was not a favorable termination" for the plaintiff, "because his incarceration was not 'reversed, expunged, invalidated, or impugned'" (emphasis omitted)). And, as previously noted, the Carlton County District Court has yet to rule on the habeas claim transferred to it by the Washington County judge. Thus, *Heck* bars Favors's Section 1983 claims against Hoover, to the extent they allege Hoover's actions were the cause of his parole revocation.

Moreover, *Heck* also bars a suit for damages stemming from other harmful actions that, if deemed unlawful, would necessarily mean that a conviction or sentence was unlawful. *Portley-El v. Brill*, 288 F.3d 1063, 1067 (8th Cir. 2002). As the R&R correctly notes, Favors's complaint asserts that all of Hoover's retaliatory actions ultimately culminated in his parole revocation and imprisonment with the DOC in Stillwater. (R&R

at 17.)   Indeed, the report of the DOC's Hearings and Release Unit, detailing the August 23, 2010 hearing and concluding Favors's parole needed to be revoked, bases its decision largely on testimony from Hoover that provides a chronology of her entire history of interaction with Favors.  (DOC Hearings and Release Unit, Ex. 71, Oct. 31, 2013, Docket No. 106-3.)   If Favors succeeds in demonstrating that any of Hoover's reports or actions were false or retaliatory, he will impugn or effectively invalidate his parole revocation, which *Heck* bars.

Favors argues that, even if *Heck* bars his allegations against Hoover related to the parole revocation, he may challenge his isolation separately.  (Objections at 5-7.)  But the Magistrate Judge did state that *Heck* does **not** bar a challenge to the fact of Favors's isolation itself.  (R&R at 19-20.)  As to Favors's claims against Hoover, however, Hoover was not the one who placed Favors directly in isolation.  (Compl. ¶ 229.)  Instead, it was the stalking allegations and I.P.P. recommendation in Hoover's allegedly false and retaliatory tenth report that most directly led to his isolation.  (*Id.* ¶¶ 187-95.)  Those same allegations also led to his parole revocation.  (*Id.* ¶ 253.)  In other words, trying to draw a distinction between his isolation and imprisonment, for the purposes of his claims against Hoover, is futile.   As a result, the Court overrules Favors's objections to the Magistrate Judge's recommendation that Favors's Section 1983 claims against Hoover should be dismissed without prejudice.[6]

---

[6] Favors raises the same arguments again in his twenty-first objection. He disputes the Magistrate Judge's legal conclusion that success on his Section 1983 claim challenging his parole revocation and imprisonment with the DOC in Stillwater would impugn the validity of

(Footnote continued on next page.)

### B.     *Heck* and Other Defendants

In his twenty-second objection, Favors seems to object to the Magistrate Judge's recommendation to bar some of Favors's claims against other defendants under *Heck*. (Objections at 57-58; R&R at 18-20.)  He argues that no other defendant raised *Heck* as a defense and that it cannot bar **all** of his claims.  (Objections at 57.)  Since the decision in *Heck*, the Supreme Court has recognized a broadening of the scope and reach of the favorable-termination requirement.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("These cases, taken together, indicate that a state prisoner's Section 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – **if** success in that action would necessarily demonstrate the invalidity of confinement or its duration.").  Thus, *Heck* applies and bars any of Favors's claims that would demonstrate the invalidity of his parole revocation and imprisonment, since he has not yet met the favorable-termination requirement.

While Favors is correct that not every defendant raised *Heck* in their motions to dismiss, that fact does not mean the Court cannot conclude his claims are *Heck*-barred.

---

(Footnote continued.)

that imprisonment and therefore be *Heck*-barred.  (Objections at 52-57.)  He argues that the Washington County District Court habeas decision did, practically, meet the favorable-termination requirement, as much as was possible under the circumstances.  (*Id.* at 54-55.)  He notes that the state court went so far as to forecast the possibility of him filing a Section 1983 claim.  (*Id.* at 55-56.)  He also seems to argue that *Heck* only applies to his underlying criminal conviction, not the parole revocation.  (*Id.* at 57.)  These arguments are all addressed above and, since all of them are unavailing, the Court overrules this objection as well.

Favors is proceeding without the payment of fees, under 28 U.S.C. § 1915.  (Order on Application to Proceed Without Prepayment of Fees, April 2, 2013, Docket No. 3.) Section 1915(e)(2)(B)(ii) empowers the Court to "dismiss the case at any time if [it] determines that . . . the action . . . fails to state a claim on which relief may be granted." *See also Gautreaux v. Sanders*, 395 Fed. Appx. 311, 312 (8th Cir. 2010) (affirming the district court's dismissal, under 28 U.S.C. § 1915(e)(2)(B), of *Heck*-barred Section 1983 claims, but modifying the dismissal to be without prejudice).  Thus, the Court can analyze Favors's claims' viability under *Heck* even if the defendants did not raise it.

Finally, to the extent Favors argues again in this objection that the Magistrate Judge was wrong to recommend dismissing his claims against Hoover, the discussion in the preceding section addresses those arguments.  (Objections at 56-57.)  Because they impugn the validity of his parole revocation and imprisonment, and because Favors has failed to meet the favorable-termination requirement, his Section 1983 claims against Hoover, and the claims against other defendants the Magistrate Judge identified, (R&R at 18-19), are *Heck*-barred.  The Court overrules Favors's objections.[7]

---

[7] In his eighth objection, Favors again raises *Heck*.  (Objections at 17-18.)  He argues that his claims against several defendants regarding his HSA isolation – namely that the isolation was retaliatory and the conditions were punitive, cruel, and abusive – are not barred by *Heck*.  (*Id.*) The Court overrules this objection.  The R&R only states that, to the extent his isolation claims allege that the isolation was based on false accusations that he was stalking Hoover, those claims are *Heck*-barred.  (R&R at 26.)  That analysis is correct because concluding the HSA isolation wrongly relied on the stalking accusations and therefore violated Favors's constitutional rights would necessarily also implicate and impugn the validity of Favors's parole revocation, which was based on the same stalking allegations.

## V.   DIRECT PERSONAL INVOLVEMENT

To successfully assert a claim under 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *McDonald v. City of St. Paul*, 679 F.3d 698, 704 (8th Cir. 2012) (internal quotation marks omitted). A plaintiff must show some personal involvement on the part of the defendant official; vicarious liability or the doctrine of respondeat superior will not suffice. *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." (internal quotation marks omitted)).

### A.   Failure to Train and Supervise

Favors argues in his fourth objection that, contrary to the Magistrate Judge's recommendation, his failure to train claims against seven defendants should go forward because those defendants ignored the fact that MSOP employees were having "personal relationship[s]" with civilly committed patients at MSOP.   (Objections at 7-9.) Assuming, as the Magistrate Judge did, that Favors's failure-to-train allegations constitute a 42 U.S.C. § 1983 claim, the Court nevertheless overrules Favors's objections.

For Favors to demonstrate failure-to-train liability, he must show "the need for more or different training is so obvious, and the inadequacy so likely to result in the

violation of constitutional rights, that [the defendants] can reasonably be said to have been deliberately indifferent to the need." *Ambrose v. Young*, 474 F.3d 1070, 1079-80 (8th Cir. 2007) (internal quotation marks omitted). The standard includes a causation element: "the identified deficiency in . . . training . . . must be closely related to the ultimate injury such that the deficiency in training actually caused the . . . offending conduct." *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) (internal quotation marks omitted).

Even assuming that Favors's allegations regarding other MSOP employees, beyond Hoover, having relationships with MSOP patients do not constitute a motion to amend his complaint, (State Def.'s and Def. Benson's Resp. to Plaintiff's Objections to the R&R, at 3-4, June 5, 2014, Docket No. 212), Favors's objections are unavailing for two reasons. First, he cannot show that the need for more training regarding sexual conduct with MSOP patients is so obvious that the defendants were deliberately indifferent to that need. *See Andrews*, 98 F.3d at 1077 ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.") Instead, Hoover's attempts, for example, to cover up her illicit behavior, (Compl. ¶ 257), show that MSOP employees understood fully that such conduct was wrong. And to the extent Favors argues that the named defendants simply ignored his or any complaints regarding Hoover, and thereby demonstrated deliberate indifference, that argument is belied by the fact that MSOP did conduct an investigation and, according to Favors himself, eventually terminated and prosecuted Hoover. (*Id.* ¶¶ 274, 282-83.)

Second, even in light of his allegations regarding other MSOP employees, Favors has failed to meet the causation requirement.  He has not shown that the failure to train led to the "offending conduct." *Andrews*, 98 F.3d at 1077.  Indeed, different than in *Andrews*, the "offending conduct" here is more removed from the failure to train.  The "offending conduct" is not the relationship between Hoover and Crow, since that relationship did not implicate Favors's constitutional rights.  Instead, the question is whether the failure to train led to an inappropriate relationship that led to all of the other harmful conduct of which Favors complains (e.g., retaliation, wrongful imprisonment and isolation, etc.).  Favors has failed to meet that causation burden.  Thus, his objections to the Magistrate Judge's failure-to-train analysis are overruled.

In his fifth objection, Favors also challenges the Magistrate Judge's recommendation to dismiss his failure-to-supervise claims.  (Objections at 10-11.)  "A failure-to-supervise claim may be maintained only if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (internal quotation marks omitted).  "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 550 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Favors argues that his various complaints contained overwhelming evidence of Hoover's inappropriate relationship with Crow and that defendants' failure to take action sooner shows deliberate indifference or tacit authorization.  (Objections at 10-11.)  But Favors's many complaints, while compelling

in hindsight, do not contain enough evidence to show a substantial risk of serious harm to Favors.  As a result, this objection is overruled.

### B.    Retaliation

Favors objects to the Magistrate Judge's recommendation that the Court conclude Favors had failed to show personal involvement by a number of defendants in retaliation against Favors.  (Objections at 11-16.)  Specifically, he argues that defendants Kozisch, Swanson, Storkamp, Hebert, Youngst, O'Conner, Hibber, Ramem, Jesson, Moser, Linkert, Benson, White, Magaard, Virden, James, and Hoover were all personally involved in retaliation in various ways: by putting Favors in punitive isolation, by receiving Favors's complaints and allegations by mail and ignoring them, by subjecting Favors to harassing room searches, by enforcing punitive isolation policies and procedures, by firing him from a MSOP job, by treating Favors differently only after he had filed complaints against MSOP staff, by testifying falsely to the Hearings and Release Unit, by restricting Favors's movements within MSOP, and by falsely accusing Favors of stalking and harassing Hoover.

The First Amendment bars "government officials from subjecting an individual to retaliatory actions . . . on the basis of his constitutionally protected speech."  *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (internal quotation marks omitted).  To succeed in a retaliation action, a plaintiff must demonstrate "a causal connection between a defendant's retaliatory animus and [plaintiff's] subsequent injury."  *Id.* (internal quotation marks omitted).  In his objections, Favors largely repeats the allegations found

in his complaint.  His Section 1983 claims against Hoover, as discussed above, are *Heck*-barred.  Other defendants he lists in this part of his objections are not actually discussed in the corresponding section of the R&R.  As to the remaining defendants, Favors fails in his objections to provide anything more than conclusory allegations not only of alleged injuries he suffered, but of the causal link between the retaliatory animus each of the defendants on his list allegedly felt toward him and the injuries he eventually experienced.  As a result, the Court overrules Favors's sixth objection.

### C.    Room Searches

The Magistrate Judge recommended dismissing Favors's Fourth Amendment claims, which allege that he was subjected to unconstitutional room searches and strip searches.  (R&R at 25.)  The R&R notes that, in his complaint, Favors has not identified the people responsible, nor has he sufficiently alleged the personal involvement of any officials.  (*Id.*)  Favors counters that defendants Youngst and O'Conner were directly responsible for the retaliatory daily room searches and that the reasons for the searches – first that they were random, then that they were due to his alleged stalking of Hoover – were mere pretext, covering up a deeper retaliatory motive.  (Objections at 16-17.)

The Court overrules this objection because, even assuming the Court can consider at this stage Favors's more specific allegations regarding Youngst and O'Conner, Favors has not alleged searches that are outside the scope of what is reasonable under the Fourth Amendment.  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028-29 (8th Cir. 2012).  The searches were especially reasonable given the allegations that Favors was stalking,

following, and harassing Hoover.   As a civilly committed person, Favors has more

protections than a true prisoner, but "his confinement is [still] subject to the same safety

and security concerns as that of a prisoner."   *Id.* at 1028 (internal quotation marks

omitted).   Even factoring in the allegations in both the complaint and the objections,

Favors has still failed to show a Fourth Amendment violation.   Favors's seventh

objection is overruled.

### D.     Abusive Conditions In and Around HSA Isolation

Favors also objects to the Magistrate Judge's conclusion that Favors had failed to

demonstrate sufficient personal involvement by any defendant in the poor conditions he

faced while serving in HSA isolation and the shackling he experienced while being

transported to and from isolation.   (Objections at 18-21.)   He argues that the policies that

allowed such poor treatment are unwritten but understood by all MSOP employees.   He

also contends that he had a list of responsible MSOP staff members but that list was

confiscated, and that similar allegations in other MSOP civil rights cases – namely the

*Holly v. Konieska* case – provide sufficient evidence to get beyond a motion to dismiss.

(*Id.*); *see, e.g.*, *Holly v. Konieska*, No. 04-cv-1489 (ADM/FLN), 2012 WL 2126838, at *1

(D. Minn. June 12, 2012) (describing a prior order in the *Holly* case that had directed

MSOP to change and improve its HSA isolation rules and procedures).

Similar to the arguments considered by the Magistrate Judge, these new arguments

still fail to provide sufficient factual detail to support a Fourteenth Amendment

substantive due process claim based on the conditions of his isolation and movement to

and from isolation. The R&R pointed out that Favors challenged no specific MSOP isolation-condition policy. (R&R at 26.) Favors's objection provides a conclusory claim that the policy exists and is known by MSOP employees, but is unwritten. But Favors provides no evidence for this accusation and more is needed to survive this motion to dismiss. Moreover, his inability to point to any employees aside from HSA supervisors leaves him far short of the "personal involvement" requirement for making a constitutional claim against state officials. Favors also fails to explain, with specificity, why his case is similar to the *Holly* case, especially given the amount of time that has passed since that case, and the changes MSOP has presumably made since then. Finally, his allegations regarding shackling are especially unavailing, given that the Eighth Circuit has recently ruled that MSOP's restraint policy does not violate the Constitution. *Beaulieu*, 690 F.3d at 1032-33. In sum, the Court overrules Favors's ninth and tenth objections.

## VI.     FIRST AMENDMENT RETALIATION

To show a prima facie case of retaliatory discipline, Favors must demonstrate that "(1) [he] exercised a constitutionally protected right; (2) prison officials disciplined [him]; and (3) exercising the right was the motivation for the discipline." *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (internal quotation marks omitted). The third element requires proof of "but-for" causation: "[t]o establish the third element of the prima facie case for retaliatory discipline . . . an inmate must show that but for a

retaliatory motive the prison official would not have filed the disciplinary report." *Id.* at 1156.

## A.     Defendant Benson

The Magistrate Judge recommends dismissing Favors's First Amendment claims against Benson because he has failed to demonstrate the third element; in other words, Favors has failed to show a "but-for" causal connection between the retaliatory motive Favors alleges and the disciplinary action taken by Benson.   (Objections at 21-23.) Favors argues in his objections that Benson lied about Favors violating MSOP rules and that Benson had no way to know Favors was not telling the truth about Hoover and other MSOP employees. (*Id.*)   Finally, to the extent the Magistrate Judge presents other reasons, aside from the retaliatory motive, for Benson's actions, Favors contends those reasons are wrong.  (*Id.* at 22-23.)  Specifically, he argues that because his movements were so restricted within the MSOP facility, there is no way he could stalk and investigate Hoover, and every MSOP employee knows that practical reality.  (*Id.*)

The Court overrules this objection because Favors has failed to provide sufficient support, even at this early stage of the proceedings, for the but-for causation element of the retaliation standard.  As the R&R correctly noted, Benson had other reasons – namely the actual evidence that Favors was stalking, or at least aggressively following and investigating Hoover – to taking disciplinary action against Favors, aside from his alleged retaliatory motive.  (R&R at 30.)  While it is true that Favors's movements were somewhat restricted in the MSOP facility, his own exhibits belie the claim that he was

unable to investigate or follow Hoover.  Indeed, the record shows that Favors assembled a long list of complaints and observations about Hoover's behavior.  The amount of time and energy needed to mount this personal investigation was likely to trigger some concern on the part of Benson and, as a result, provide an alternative justification for his disciplinary action that shows Favors has failed to demonstrate but-for causation. Favors's eleventh objection is overruled.

### B.      Defendants James, Magaard, Virden, Hebert, and Storkamp

Favors objects to the Magistrate Judge's recommendation that Favors's retaliation claims against James, Magaard, Virden, Hebert, and Storkamp should be dismissed. (Objections at 23-37.)  He argues that, under the Sixth Circuit's decision in *Thaddeus-X v. Blatter*, he has demonstrated a plausible retaliation claim against defendants James, Magaard, and Virden because of the timing of their adverse actions.  175 F.3d 378, 399 (6th Cir. 1999) ("Circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate.")  He claims that these defendants only took adverse action against him after he starting filing complaints against Hoover and other staff at MSOP.  He claims that because he mailed complaints to Hebert and Storkamp, they "knew or should have known" about Hoover's wrongful actions, but remained indifferent to them.  (Objections at 27.)  To the extent the R&R credits another explanation for these defendants' actions – namely that they believed, rightly or not, Hoover's stalking allegations – Favors argues that issue is a factual one best left to a jury.

As to Hebert and Storkamp, the objections continue to allege only vicarious or respondeat superior liability, which, as discussed above, is not sufficient.  As to James, Magaard, and Virden, Favors largely repeats the conclusory allegations found in his complaint.  And while the timing of adverse actions can support a retaliation allegation, simply using that label cannot meet the requirements of plausibility in a complaint.  The R&R rightly considered the most obvious alternative explanation, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009), and Favors has failed to allege the sort of "additional facts" needed "to rule out the alternative."  As a result, he has failed to show the but-for causation element of a retaliation claim.  Supreme Court and Eighth Circuit law clearly empowers the Court to make such a determination, contrary to Favors's claim that this issue **must** be submitted to a jury.  The Court overrules Favors's twelfth, thirteenth, and fourteenth objections.

## C.    Defendant White

In his sixteenth objection, Favors disputes the Magistrate Judge's recommendation to dismiss Favors's retaliation claim against White.  (Objections at 30-32.)  Favors contends that White gave him a cleaning job, but failed to tell him about it, and when Favors never showed up for work, White then assigned him to a kitchen job (which Favors explicitly stated he did not want to do).  (*Id.*)  Favors cites *Thaddeus-X* again, stating that he can get beyond the motion-to-dismiss stage by pointing to the timing of White's adverse actions.  (*Id.* at 31.)  Here again, the Court overrules Favors's objection because he has failed to show any plausible way that he might meet the but-for causation

requirement of a retaliation claim.  Assuming that assigning Favors to kitchen work he did not want to do is "disciplinary action," it is not apparent from the complaint that White only did this due to a retaliatory motive.  Favors's conclusory claim that his employment issues at the MSOP facility were all "Todd White's fault" is not enough to survive a motion to dismiss.  (Objections at 31.)  This objection is overruled.[8]

## VII.   CONSPIRACY

To state a civil rights conspiracy claim under 42 U.S.C. § 1985, Favors must allege "(1) a conspiracy, (2) for the purpose of depriving another of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." *Federer v. Gephardt*, 363 F.3d 754, 757-58 (8th Cir. 2004) (internal quotation marks omitted).  Civil rights conspiracy claims require "proof of a class-based animus." *Id.*  The R&R recommends dismissing Favors's conspiracy claim because he has failed to allege "class-based animus."  (R&R at 34-35.)  Favors objects to the Magistrate Judge's recommendation, arguing that he has alleged a class against whom the defendants harbor animus: sex offenders.  (Objections at 32-33.)  However, Favors's complaint alleges that the defendants acted in retaliation for his grievances against them, not out of a feeling of animosity toward all sex offenders.  Moreover, Favors provides no

---

[8] Favors also argues that his complaint is robust enough to demonstrate a viable retaliation claim against Hoover.  (Objections at 28-30.)  The R&R does not address Hoover in this section, however, since a retaliation claim is asserted under 42 U.S.C. § 1983 and the R&R already recommended that Hoover's Section 1983 claims be *Heck*-barred.  Since this Court agrees with that recommendation, Favors's fifteenth objection is overruled.

support for the claim that a group of sex-offender litigants constitutes a class protected by Section 1985. *See, e.g.*, *Biby v. Bd. of Regents of Univ. of Neb. at Lincoln*, 338 F. Supp. 2d 1063, 1074-75 (D. Neb. 2004) (concluding that similarly situated people suing the government for redress of grievances are not, due to their common injuries and litigating positions alone, a cognizable class). Favors's seventeenth objection is overruled.

## VIII.  DENIAL OF ACCESS TO THE COURTS

Favors objects to the Magistrate Judge's recommendation to dismiss his claim that he was denied access to the courts when certain defendants confiscated his legal research materials. (Objections at 33-35.) In response to the R&R's conclusion that Favors had failed to allege an actual injury, (R&R at 36), Favors cites *Thaddeus-X* for the proposition that in the retaliation context, actual injury is not required; instead, it is enough to show that Favors "is penalized for actually exercising" his right of access to the courts. *Thaddeus-X*, 175 F.3d at 394.

Setting aside the fact that *Thaddeus-X* is a Sixth Circuit case, the decision recognizes that in a standard claim alleging a denial of access to the courts, actual injury is necessary. *Id.* In a retaliation claim, however, the claim is not that a plaintiff was denied access to the courts, but that he was penalized, in a retaliatory manner, because of his attempts to use the legal system. *Id.* Either way, however, the Court overrules Favors's objection and adopts the recommendation to dismiss this claim. If Favors is alleging that the seizure of his legal documents has denied him the ability to access the

court system or make further complaints, he has failed to allege what injury has resulted from that harm.  If, on the other hand, he alleges that the seizure is another example of retaliatory actions taken against him by MSOP employees, he has failed to meet the but-for causation requirement that plausibly shows that these documents were seized pursuant to a retaliatory motive.  Thus, the Court overrules Favors's eighteenth objection.

## IX.   PROCEDURAL AND SUBSTANTIVE DUE PROCESS

### A.   Procedural Due Process

The Court reviews a procedural due process claim in two steps.  First, the Court asks "whether [Favors] has been deprived of a protected liberty or property interest." *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  Second, if Favors has a protected interest, the Court considers "what process is due by balancing the specific interest that was affected, the likelihood that the [challenged] procedures would result in an erroneous deprivation, and the [challenged program's] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Id.*  The R&R recommends dismissing Favors's claim that he was put in HSA isolation in violation of his procedural due process rights because (1) the process he received was similar to the process approved in *Senty-Haugen*; and (2) even if Favors was entitled to greater protection than he received, the defendants he sued are entitled to qualified immunity on Favors's procedural due process claim and Favors has not demonstrated a violation of clearly established rights.  (R&R at 36-40.)

Favors objects, claiming that the case is different from *Senty-Haugen* because the defendants here were not actually isolating him to investigate allegations of stalking but were instead doing so to retaliate against him.  (Objections at 35.)  But these allegations, which are relevant to a retaliation claim and go to the defendants' motives for isolating him, fail to show that Favors received deficient process prior to being isolated.  Instead, the record shows Favors received notice and an opportunity to contest his isolation – the sort of process approved of in cases like *Senty-Haugen*.  (Compl. ¶¶ 233, 238; Findings and Recommendations of the HRB, Ex. 43(1), Oct. 31, 2013, Docket No. 106-3.)  And Favors has failed to demonstrate why qualified immunity would not protect the defendants, since there is no case law to show that they violated his clearly established constitutional rights.  Favors's nineteenth objection is overruled.

### B.        Substantive Due Process

The substantive due process right found in the Fourteenth Amendment protects Favors from government conduct (which deprives a person of life, liberty, or property) that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty."  *Strutton v. Meade*, 668 F.3d 549, 558 (8th Cir. 2012) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted).  The Eighth Circuit has noted that substantive due process violations are rare.  *Id.* at 557 ("Only in the rare situation when . . . state action is truly egregious and extraordinary will a substantive due process claim arise." (internal quotation marks omitted)).  In his twentieth objection, Favors argues that he suffered multiple substantive due process violations and objects to

the Magistrate Judge's recommendation to dismiss each of those alleged violations. (Objections at 35-52.)  The Court will consider each alleged violation in turn.

### 1.    Loss of Wages and Employment

Favors contends that Minnesota Administrative Rule 9515.3040 creates an interest in employment while in a treatment program like MSOP.  (Objections at 37.)  He argues White violated that interest by assigning Favors a job but setting him up to fail by not telling Favors about it, and then by assigning him a kitchen job that White knew Favors did not want to do.  (Objections 36-40.)  Favors accuses others of being complicit in this conduct, which Favors claims "shocks the conscience."  (Objections at 37-40.)

While the rule Favors cites sets out certain requirements for sex offender treatment programs generally, it does not create a statutory interest in a work program for individual participants in the treatment program.  *Cf. Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992) ("Prisoners have no constitutional right to educational or vocational opportunities during incarceration.").  Moreover, Favors's allegations regarding White, and others to whom Favors directed complaints about White, do not demonstrate the sort of egregious behavior that truly "shocks the conscience."   The Court overrules this objection.

### 2.    Loss of Recreation and Education

Favors contends that the I.P.P. that restricted his access to the recreation and education areas of the MSOP facility between noon and 9 p.m. deprived him of critical components of his treatment program (i.e., the chance to socialize with others and to

learn and rehabilitate) and that the I.P.P. was retaliatory and justified only by the false claim that he was stalking and harassing Hoover.  (Objections at 40-47.)  Here again, keeping in mind that substantive due process violations are supposed to be rare and egregious, *see Strutton*, 668 F.3d at 557-58, the Court concludes Favors has failed to demonstrate a substantive due process violation where the I.P.P. still allowed Favors to use the recreation and education areas before noon.  The I.P.P. is not the sort of wrong against which the Fourteenth Amendment protects Favors.  This objection is overruled.

### 3. Seclusion

Favors objects to the Magistrate Judge's recommendation to deny his seclusion claim, arguing that his time in isolation at MSOP caused him years of psychological trauma.  (Objections at 41-42.)  He appears to be responding to the R&R's citation to *Wishon*, 978 F.2d at 448-49, in which the Eighth Circuit rejected an Eighth Amendment challenge by a prisoner who received 45 minutes per week for exercise and 30 minutes per week for showers but alleged no injury or decline in health.  But even if Favors's objections sufficiently allege a decline in health, they do not change the fact that he has shown neither that he was deprived of basic necessities, nor that there was any substantial risk of harm, or the decline in health Favors complains of, that the defendants ignored. *Beaulieu*, 690 F.3d at 1045.  Favors's seclusion objection is overruled.

### 4. Inadequate Treatment and Wrongful Discharge from Treatment

The Magistrate Judge recommends dismissing Favors's inadequate and wrongful discharge from treatment claims because his discharge from treatment when he was in

isolation and when he was returned to prison was not egregious or extraordinary and because he does not have a substantive due process right to sex offender treatment. (R&R at 44 (citing *Strutton*, 668 F.3d at 557 ("The district court was correct that Strutton does not have a fundamental due process right to sex offender treatment."); *Bailey v. Gardebring*, 940 F.2d 1150, 1155 (8th Cir. 1991)).)    Favors objects to this recommendation but ultimately points to no authority to show that the breaks in treatment were egregious or that he has a right to sex offender treatment at all.   (Objections at 48-51.)   As a result, the Court overrules Favors's inadequate treatment and discharge from treatment objections.[9]

## X.      STATE LAW CLAIMS

Because the Court adopts the recommendation of the Magistrate Judge to dismiss Favors's federal claims, the Court also agrees with the R&R's recommendation to decline to exercise supplemental jurisdiction over Favors's state law claims.   *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) ("We stress the need to exercise judicial restraint and avoid state law issues wherever possible." (internal quotation marks omitted)).

---

[9] Favors also claims Hoover's relationship with Crow is egregious behavior that "shocks the conscience."   (Objections at 52.)   However, Favors fails to show how the egregiousness of Hoover's behavior with Crow deprived Favors of a cognizable interest.   Moreover, Favors's claims against Hoover are addressed in the *Heck* portion of the R&R and this Order.   The Court overrules this objection.

## XI.    DEFAULT JUDGMENT

Favors did not object to the Magistrate Judge's recommendation to dismiss Favors's default judgment motion against Mehl and Boreland.  (Default Judgment R&R, May 13, 2014, Docket No. 207.)  Finding no clear error, the Court also adopts that R&R.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, the Court **OVERRULES** Favors's objections [Docket No. 210] and **ADOPTS** the first Report and Recommendation of the Magistrate Judge dated May 13, 2014 [Docket No. 207] and the second Report and Recommendation of the Magistrate Judge dated May 13, 2014 [Docket No. 208].  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's motion for default judgment [Docket No. 143] is **DENIED.**

2.      Defendant Michelle Hoover's motion to dismiss plaintiff's federal claims [Docket No. 195] is **GRANTED** and those federal claims against her are **DIMISSED without prejudice**.

3.      The State Defendants' motion to dismiss plaintiff's federal claims against them [Docket No. 88] is **GRANTED** and those federal claims against the State Defendants are **DIMISSED without prejudice**.

4.      Defendants Christopher Boreland and Mark Mehl's motion to dismiss plaintiff's federal claims [Docket No. 139] is **GRANTED** and those federal claims against the Boreland and Mehl are **DIMISSED without prejudice.**.

5.      Defendant Dennis Benson's motion to dismiss plaintiff's federal claims against him [Docket No. 132] is **GRANTED** and those federal claims against Benson are **DIMISSED without prejudice**.

6.      The Court declines to exercise supplemental jurisdiction over the remaining state law claims against Michelle Hoover, the State Defendants, the County of Dakota (Boreland and Mehl), and Dennis Benson.

DATED:   September 30, 2014              _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                          United States District Judge