UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Anthony Favors,

                Plaintiff,

  v.

Michelle Hoover, et al.,

                Defendants.

Court File No. 13-cv-428 (JRT/LIB)

**REPORT AND RECOMMENDATION**

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), and upon Defendant Joann Fabian, Defendant John King, Defendant Jeffrey Peterson, and Defendant Deborah Schadegg's (collectively, the "DOC Defendants") Motion for Summary Judgment, [Docket No. 239]; and Defendant Office of Health Facility Complaints' ("Defendant OHFC") Motion to Dismiss, [Docket No. 246]. [1]

For the reasons set forth below, the Court recommends that the DOC Defendants' Motion for Summary Judgment, [Docket No. 239], be **GRANTED**; and that Defendant OHFC's Motion to Dismiss, [Docket No. 246], be **GRANTED**.

## I.    BACKGROUND

### A.  Plaintiff's Complaint

Joseph Anthony Favors ("Favors") is civilly committed as a "sexually dangerous person" and "sexual psychopathic personality" at the Minnesota Sex Offender Program in Moose Lake, Minnesota ("MSOP"). (Compl., [Docket No. 1], ¶ 21). On February 21, 2013, Favors initiated

---

[1] For the sake of simplicity, the Court uses the same spelling for each Defendant's name that appeared in the Plaintiff's Complaint, [Docket No. 1].

the present action by filing his *pro se* Complaint, [Docket No. 1], against the DOC Defendants, Defendant OHFC, and fifty-one other individual and institutional Defendants, alleging claims arising out of the August 23, 2010, revocation of his supervised release and subsequent imprisonment with DoC for stalking Michelle Hoover ("Hoover") at the MSOP.[2]   In his Complaint, Favors alleges that at MSOP he was also subject to punitive confinement, a counter-therapeutic environment, inadequate treatment, retaliation, interference with making complaints, discharge from treatment, isolation, imprisonment, a false criminal charge, cruel and unusual abuses, and loss of personal property. (Id. at ¶¶ 100-02, 196-270, 330, 434-36).

Favors alleged that, beginning on December 8, 2009, Hoover, then a security counselor at the MSOP, filed the first of a series of ten false reports against him. (Id. at ¶¶ 42, 103-28, 130-33, 150-55, 165-83, and 187-95). Beginning at about that same time, Favors started filing complaints against Hoover with the Office of Special Investigations and a number of the named Defendants, alleging that Hoover had made false, retaliatory reports against him because he had reported her inappropriate relationship with a patient at the MSOP. (Id. at ¶¶ 44-45, 112, 115, 118, 122, 129). On January 8, 2010, Favors filed one such complaint, to which he attached supporting affidavits from other MSOP patients, reporting that they had seen evidence that Hoover was engaging in a sexual relationship with Michael Crow ("Crow"), another MSOP patient. (Id. at ¶ 129). One of the other patients providing the attached affidavits was given, and passed, a polygraph test. (Id.).

Hoover and Favors continued to file complaints against each other. (Id. at ¶¶ 144-64). On March 12 and 13, 2010, Hoover wrote a report accusing Favors of stalking her. (Id. at ¶¶ 165-77). Favors wrote a complaint about Hoover, alleging that her report had been false and Favors urged Jamie Jungers, Dianna Magaard and Beth Virden, who were employed in the Office of

---

[2] Plaintiff's claims against Hoover were dismissed on September 30, 2014. (Mem. Op. & Order, [Docket No. 220]). Hoover is not a party to either motion addressed in this Report and Recommendation.

Special Investigations, to review security camera footage that would exonerate him. (Id. at ¶¶ 176, 178-83).[3] On May 16, 2010, Favors filed a complaint about Jungers, asserting that Jungers was not interested in following up on Favors' complaints about Hoover and asking that Jungers be removed from investigating Favors' complaints. (May 16, 2010, Complaint, Ex. 26, [Docket No. 106-2] 25-50; May 16, 2010, Complaint, Ex. 26, [Docket No. 106-3], 1).

In May 2010, Hoover wrote her tenth allegedly false and retaliatory report against Favors, requesting that he be placed on an Individual Program Plan (an "I.P.P."), restricting Favors from activities in the recreation and education areas of the MSOP from noon until 9:00 p.m., while Hoover was in those areas. (Id. at ¶¶ 187-98). Favors filed a complaint about this to the Hospital Review Board (the "HRB") on January 23, 2012. (Id. at ¶ 201).

Favors alleges that, on June 10, 2010, Deb Konieska[4] wrote a false Quarterly Review Report ("QRR")[5] accusing Favors of targeting several female staff members even after he had received numerous directives to stop doing so, of making false allegations against Hoover, and of complaining when female staff members did not agree with his grievances. (Id. at ¶ 216).[6] The report said Favors' motive was to watch Hoover whenever she was near Crow and to document their interactions. (Id.).  In doing so, he violated three rules that quarter. (Id.). Favors complained about this QRR to the HRB. (Id. at ¶¶ 217, 238). Konieska's allegations against him in the QRR were used also against him in his supervised release revocation hearing. (Id. at ¶ 220). On the same day the QRR was issued, Favors was placed in isolation and his legal materials were confiscated so that MSOP staff could conduct a criminal investigation into claims that Favors

---

[3] Plaintiff's claims against Defendants Jungers, Magaard, and Virden were dismissed on September 30, 2014. (Mem. Op. & Order, [Docket No.220]).  Those individuals are not a party to any motion addressed in this Report and Recommendation.

[4] Konieska was never served with the Complaint, and was dismissed from this action on December 12, 2013, (Mem. Op. & Order [Docket No. 167]).  She is not a party to any motion addressed herein.

[5] The Report is called "Quarterly Treatment Review." (Ex. 40 [Docket No. 106-3], at 40).

[6] Favors alleged that, beginning on that date, he was also discharged from sex offender treatment until March 2011. (Compl., [Docket No. 1], at ¶¶ 240-241).

had been stalking Hoover. (Id. at ¶¶ 229-42). Favors filed complaints and grievances about a number of the conditions of his stay in isolation.  (Exs. 44-47, [Docket No. 106-3], 88-102).

Favors was then charged with violating the conditions of his supervised release by stalking Hoover. (Id. at ¶ 253). On or about August 4, 2010, Favors was transferred from the MSOP to the Minnesota Correctional Facility in Lino Lakes, Minnesota, where he was held until his supervised release revocation hearing. (Id. at ¶ 249).

On August 23, 2010, the Hearings and Release Unit of the Department of Corrections (the "DOC") held a release revocation hearing presided over by DOC hearing officer Defendant Deborah Schadegg. (Id. at ¶¶ 253, 264). According to Favors, at the hearing, Hoover gave false testimony about his conduct and about her sexual relationship with Crow. (Id. at ¶¶ 253-66). Dianna Magaard also allegedly testified falsely that she had told Favors on four occasions not to file any more complaints against Hoover. (Id. at ¶ 210).

Favors also alleges that, at the hearing, his counsel attempted to offer affidavits from other patients of the MSOP, but that Defendant Schadegg did not accept the affidavits into evidence. (Id. at ¶ 264).  Favors' reference to the offering of affidavits at the revocation hearing appears to refer to the following discussion which took place at the hearing:

| | |
|---|---|
| Favors: | Now, I have other affidavits from other people, you know, Dan Johnson, they sometime in November or December he walked into the legal room. And he says… |
| Schadegg: | You can't tell me what he said.  I would have to hear it from him. Okay. That's the problem with what you're putting on paper here and what you're saying. Is it's all hearsay, hearsay, hearsay. |
| Favors' counsel: | If he has an affidavit though, he can submit an affidavit. |
| Schadegg: | Is it notarized? |
| Favors: | Yes it is. |

4

| | |
|---|---|
| Schadegg: | I…I'm not interested in what Mr. Johnson saw or thinks he saw or told Mr. Favors that he saw. Because . . . simply because he put it in paper doesn't mean that it's true. |
| Favors' counsel: | Well, that doesn't mean it's true.  But we're not trying to prove or disprove … |
| Schadegg: | No. I believe that Johnson and a … |
| Favors' counsel: | …what actually happened [unintelligible]… |
| Schadegg: | ...bunch of other people gave Mr. Favors information and a lot of it was information about what he wanted to hear. Just from listening to Joe, I'm sure that there is a couple guys that played you like a fiddle. And Burton is one of'em. |
| Favors counsel: | I would just state in general that it is relevant to his state of mind certainly. |
| Schadegg: | I've got it. I've got all that. |
| Favors' counsel: | Okay. |

(Recording of August 23, 2010, Hearing, Ex. 2 to Schadegg Affidavit, [Docket No. 241-2], at 1:26:42-1:27:50).

At the end of the hearing, Defendant Schadegg issued an oral decision finding that Favors had violated the conditions of his supervised release by his actions with regard to Hoover, which Defendant Schadegg reasoned Favors had based on the assumptions and stories that had been communicated to him by other MSOP patients, and which Defendant Schadegg concluded had exceeded his right to file a complaint under the Minnesota Patient's Bill of Rights. (Id. at 00:20-01:25, 2:15-2:30). Defendant Schadegg revoked Favors' supervised release, stating that she had based her decision on the testimony of Michelle Hoover, Dianna Maagard, Favors, and the submitted documentation. (Id. at 00:20-1:00).

Following the hearing, Favors was transferred from MSOP to the DOC Minnesota Correctional Facility in Stillwater, Minnesota. (Id. at ¶¶ 263, 267; Order Partially Dismissing

Habeas Pet. & Changing Venue, Ex. 48, [Docket No. 106-3], 103-111). The imprisonment term was set to last until February 11, 2011. (Compl., [Docket No. 1], ¶ 263). Favors appealed the decision revoking his supervised release to DOC Hearings and Release Unit executive officer Defendant Jeffrey Peterson, who affirmed the revocation. (Exs. 4-5 to Schadegg Affidavit, [Docket No. 241-4]). Favors remained in the Stillwater Correctional Facility for seven months, until his sentence expired on February 11, 2011. (Compl., [Docket No. 1], ¶ 263).

In the meantime, Hoover and others instigated a criminal complaint against Favors for stalking.[7] (Id. at ¶¶ 267-68). As a result, Favors was taken in chains and shackles to Carlton County District Court. (Id. at ¶ 270).[8] On December 3, 2010, the complaint was dismissed "in the interests of justice." (Ex. 58, [Docket No. 106-3], at 116).

In October 2010, MSOP patient Crow was facing revocation of his own supervised release. (Compl., [Docket No. 1], ¶ 276). Favors contends that Crow made a deal with Jamie Jungers to provide information about Crow's relationship with Hoover in exchange for not revoking his supervised release. (Id.). On October 15, 2010, Hoover was fired "for doing everything alleged in Mr. Favors' complaints." (Id. at ¶ 274). On May 9, 2011, Hoover was criminally charged with bringing marijuana into the MSOP and having a sexual relationship with an MSOP patient between mid-2009 and January 2010. (Id. at ¶¶ 282-84). Favors asserts that this proves that his supervised release was wrongfully revoked resulting in his being imprisoned for stalking. (Id. at ¶¶ 286-87). He alleges that Defendants either made no effort or refused to seek his release from prison after Hoover was "caught and terminated" in October 2010. (Id. at ¶ 288). He alleges that he remained wrongfully imprisoned until February 11, 2011. (Id.).

---

[7] Favors alleges that this occurred in September 2010. (Compl., [Docket No. 1], ¶¶ 267-68). The criminal complaint was actually dated August 4, 2010. (Ex. 59 [Docket No. 160-3], at 117-19]).

[8] Favors was similarly transported in chains and shackles from the Minnesota Correctional Facility in Stillwater back to the MSOP at the end of his incarceration following revocation of his supervised release. (Compl., [Docket No. 1], ¶ 294).

Favors alleges that Hoover and others directly violated his First, Fourth and Fourteenth Amendment rights under the United States Constitution, and the Minnesota Constitution. (Id. at ¶¶ 387-91). Favors also alleges that all Defendants who were aware of his complaints failed to take action on them, which Favors alleges made those Defendants directly responsible for, part of a conspiracy regarding, or deliberately indifferent to the alleged violations of his civil rights. (Id. at ¶¶ 175-76, 298, 303-04. 322, 330-31). Favors further alleges violations of state statutes, rules, and MSOP policies. (Id. at ¶¶ 378-86, 392-431). For his claims, Favors seeks monetary and injunctive relief, costs, and attorney's fees. (Id. at ¶¶ 432-87).

### B. Favors' Habeas Petitions

On February 7, 2011, four days before his release from the Minnesota Correctional Facility in Stillwater, Favors filed a petition for writ of habeas corpus in the Washington County District Court. Favors v. Jesson, No. CIV. 13-108 JRT/LIB, 2013 WL 4052668, at *1 (D. Minn. Aug. 9, 2013).  He sought release from his confinement with the DOC in Stillwater, as well as, discharge from his civil commitment with the MSOP. Id.  The Respondents in that case erroneously filed their response with the wrong court, the Carlton County District Court (the county in which Moose Lake is located). Id. The Carlton County District Court dismissed Favors' constitutional challenge on the merits, apparently basing its decision solely on the Respondents' filings. Id. The Washington County District Court partially dismissed the petition Favors had filed.  (Order Partially Dismissing Habeas Pet. & Changing Venue, Ex. 48, [Docket No. 106-3], at 103-111). The Washington County District Court dismissed his request for release from the custody of the DOC in Stillwater because he was no longer in custody there and he had been returned to the MSOP facility in Moose Lake by the time the Washington County District Court rendered its decision. (Id. at 108-09). The remainder of his habeas claims – including his

retaliation claims and the challenge to the revocation of his supervised release – were transferred to the Carlton County District Court. (Id. at 109).

On June 11, 2012, the Minnesota Court of Appeals affirmed the Washington County District Court order that had partially dismissed the habeas petition and transferred the remainder of the petition to Carlton County. Favors v. Jungers, Nos. A11-2055, A11-2104, 2012 WL 2079848, at *3-4 (Minn. Ct. App. June 11, 2012). Id. at *3. The Minnesota Court of Appeals also vacated the previous Carlton County District Court Court order, reasoning that the Carlton County District Court had not possessed the authority to dismiss a habeas petition that was at the time filed in Washington County. Id.

On December 19, 2014, the Carlton County District Court issued a second Order in which it dismiss the claims in Favors' habeas petition that had been transferred back to it from the Washington County District Court. (See Ex. 1 to Kemp Affidavit, [Docket No. 243-1], 1-2).

## C. This Proceeding

On February 21, 2013, Favors filed his *pro se* complaint in this case against fifty-six individual and institutional Defendants. (Compl., [Docket No. 1]). On December 12, 2013, the Court dismissed Favors' claims against fifteen (15) of the originally named individual defendants as a result of Favors' failure to effect service upon those Defendants. (Mem. Opinion & Order, [Docket No. 167]). On February 4, 2014, the Court dismissed Favors' claims against a sixteenth individual Defendant. [Docket No. 202]. On September 30, 2014, the Court dismissed Favors' federal claims against thirty-five (35) of the remaining individual and institutional Defendants and declined to exercise jurisdiction over Favors' state law claims as to those Defendants. (Mem. Opinion & Order, [Docket No. 220]).

On March 13, 2015, the DOC Defendants filed the present Motion for Summary Judgment. [Docket No. 239].  On that same date, Defendant OHFC filed its Motion to Dismiss. [Docket No. 246].

## II.      DEFENDANT OHFC'S MOTION TO DISMISS, [Docket No. 246]

Defendant OHFC moves the Court for an Order dismissing Favors' claims against it, arguing that it is not a department of the Minnesota Department of Human Services, which administers the MSOP where Favors is presently civilly committed; that Favors' claims against it as part of an agency of the State of Minnesota are barred by the Eleventh Amendment; and that Favors' Complaint fails to state a claim against it on which relief may be granted.

### A.  STANDARDS OF REVIEW

1.  <u>Eleventh Amendment Sovereign Immunity</u>

"The Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state." <u>281 Care Comm. v. Arneson</u>, 638 F.3d 621, 632 (8th Cir. 2011) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984)). "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985). The Eleventh Amendment bar also includes officials sued for damages in their official capacity because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." <u>Id.</u> (quoting <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)).

2.  <u>Failure to State a Claim</u>

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  In addressing a motion to dismiss for failure

to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)). "[T]he court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

3. Pro Se Litigants

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B. Analysis**

1. <u>Eleventh Amendment</u>

Defendant OHFC first asserts that the Eleventh Amendment bars Favors' claims against it as an office of the Minnesota Department of Health, an agency of the State of Minnesota. Pursuant to the Eleventh Amendment, absent a waiver, states are immune from damage suits brought by citizens in federal courts. <u>Pennhurst State School</u>, 465 U.S. 89; <u>Edelman v. Jordan,</u> 415 U.S. 651 (1974). The State of Minnesota has <u>not</u> waived its sovereign immunity to suits seeking money damages against state entities, agencies, or officials being sued in their official capacities. <u>See, e.g.</u>, <u>DeGidio v. Perpich</u>, 612 F. Supp. 1383, 1388 (D. Minn. 1985). Accordingly, to the extent that Favors' claims seek money damages from Defendant OHFC in its official capacity, Defendant OHFC is immune from suit.[9]

Having determined Defendant OHFC's immunity pursuant to the Eleventh Amendment bars Favors claims against it, the Court could stop its analysis at this point. However, in the interests of thoroughness, the Court will consider Defendant OHFC's other basis for its motion to dismiss: *i.e.*, that the allegations in Favors' Complaint fail to state a claim against it on which relief may be granted.

2. <u>Defendant OHFC not a division of the Department of Human Services or DOC</u>

Favors does not allege that Defendant OHFC directly took any action against him.[10] Rather, all of Favors' claims against Defendant OHFC are based on allegations that he filed

---

[9] Defendant OHFC asserts that it is also immune from Favors' claims against it in its official capacity to the extent that Favors seeks injunctive relief. Because the undersigned concludes that Defendant OHFC is entitled to summary judgment as to <u>all</u> of Favors' federal claims against it, and recommends that the Court not exercise jurisdiction over Favors' state law claims, the undersigned need not reach Defendant OHFC's argument that it is also immune to Favors official capacity claims against it to the extent Favors seeks injunctive relief.

[10] Favors does allege, in a conclusory manner unsupported by any specific facts, that Defendant OHFC was personally involved in the alleged violations of his civil rights. However, the Court is not required to accept such

complaints with Defendant OHFC that other individuals were violating his civil rights and that Defendant OHFC took no action to intervene.  Defendant OHFC asserts that Favors' claims against it must fail because, as Defendant OHFC correctly points out, Minn. Stat. § 144A.52 established Defendant OHFC as a division of the Minnesota Department of Health, not a division of the Minnesota Department of Human Services, which administers the MSOP.  See Minn. Stat. §§ 246B.01-.02 (committing the administration of the MSOP to the Minnesota Department of Human Services).  Defendant OHFC asserts that the only connection between the Minnesota Department of Human Services and the Minnesota Department of Health is the requirement set forth in Minn. Stat. §  246B.03, Subd. 1, for the commissioner of the Minnesota Department of Human Services to apply to the commissioner of health to license the treatment facilities operated by the MSOP as supervised living facilities.  It is also clear that Defendant OHFC is not a division of the DOC.

In essence, Defendant OHFC argues that, because it is not a division of the MSOP, it had no duty to supervise the individuals employed by the MSOP or the DOC who Favors alleges personally violated his civil rights or to intervene based on Favors' complaints. The Court agrees.

The Eighth Circuit has only recognized the existence of a duty to intervene in the context of a law enforcement officer who knows that another officer is using excessive force. See Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012) (citing Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981)); see also Id. ("We have not recognized a duty to intervene to prevent other constitutional violations.").  In addition, although it does not appear that the Eighth Circuit has directly ruled on the issue, the Tenth Circuit has stated that a "failure to supervise is only

conclusory allegations as true when not supported by specific facts, and, in any event, such unsupported conclusory allegations are insufficient to state a plausible claim. Iqbal, 556 U.S. at 664.

actionable under § 1983 against a defendant who had a duty to supervise." Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1154 (10th Cir. 2006); see also Bryson v. Macy, 611 F. Supp. 2d 1234, 1262 (W.D. Okla. 2009) aff'd sub nom. Bryson v. City of Oklahoma City, 627 F.3d 784 (10th Cir. 2010); Norris v. Davis, 826 F. Supp. 212, 217 (W.D. Ky. 1993); Harvey v. Evans, No. 3:04-CV-192, 2007 WL 701049, at *3 (E.D. Tenn. Mar. 2, 2007).

Here, because all of the individuals whom Favors alleges directly violated his rights were employed by the MSOP or the DOC, and because Defendant OHFC is not a division of the Minnesota Department of Human Services, which administers the MSOP, or the DOC, Defendant OHFC had no supervisory authority over the individuals whom Favors alleges directly violated his rights.  In addition, pursuant to Eighth Circuit caselaw, Defendant OHFC had no duty to intervene on the basis of Favors' complaints.  Accordingly, all of Plaintiff's section 1983 claims against Defendant OHFC would fail as a matter of law.

Based on all of the foregoing, the Court recommends **GRANTING** Defendant OHFC's Motion to Dismiss, [Docket No. 246], to the extent the motion pertains to Favors' federal claims against Defendant OHFC.

In addition, the undersigned notes that, in a previous Memorandum Opinion & Order, [Docket No. 220], the Court, upon dismissing the federal claims against the previously dismissed Defendants, declined to exercise supplemental jurisdiction over Favors' state law claims against those Defendants.  (Id. at 36).  The undersigned concludes that the same result is appropriate here.  Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over Favors' state law claims against Defendant OHFC.

3. Dismissal with Prejudice

With regard to Defendant OHFC's motion, only one issue remains, whether to recommend dismissal of Favors' claims with or without prejudice.  Because all of Plaintiff's claims against Defendant OHFC are barred by Eleventh Amendment immunity and fail as a matter of law at the outset, the claims should be **DISMISSED with prejudice**. See Davis v. S. Dakota Dep't of Corr., No. CIV. 05-4016, 2005 WL 1593050, at *1 (D.S.D. June 30, 2005) ("Defects which cannot be cured by amendment are recommended for dismissal *with prejudice* because as a matter of law plaintiff's allegations fail to state a claim upon which relief can be granted against those defendants and because the defect cannot be cured by amendment.").

## III.   DOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, [Docket No. 239]

The DOC Defendants move the Court for an Order granting them summary judgment on Favors' claims against them, arguing that Favors' claims are barred by the Eleventh Amendment; that Favors' claims based on unlawful incarceration are barred by the Heck doctrine; that Favors has failed to submit sufficient evidence to support his claims against any of the DOC Defendants; and, in any event, that the DOC Defendants are entitled to immunity for their challenged actions.

### A.  Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011).  A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). Reasonable inferences are those "that may be drawn without resorting to speculation." Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 885-86 (8th Cir. 2001) (citing Sprenger v. Fed. Home Loan Bank, 253 F.3d 1106, 1110 (8th Cir. 2001)).

However, the nonmoving party may not rest on mere allegations or denials in their pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

The movant is entitled to summary judgment when the nonmoving party has failed to "establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of material fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford. Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473-74.

**B. Analysis**

1.  Eleventh Amendment

The Court's analysis of Eleventh Amendment sovereign immunity with regard to Defendant OHFC's motion to dismiss, above, is equally applicable to the DOC Defendants' motion for summary judgment.  Accordingly, consistent with that analysis, to the extent that Favors' claims seek money damages from the DOC Defendants in their official capacities, the DOC Defendants are immune from suit.

2.  *Heck* doctrine.

The DOC defendants also argue, as a threshold matter, that, to the extent Favors' federal claims seek to challenge the legality of the revocation of his supervised release and his subsequent imprisonment in the DOC Minnesota Correctional Facility in Stillwater, the claims are barred by the favorable-termination requirement of the doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the United States Supreme Court held

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87. The Eighth Circuit has clarified that a plaintiff must also meet the favorable-termination requirement when "challenging the duration of his imprisonment or the loss of sentence reduction credits." Entzi v. Redmann, 485 F.3d 998, 1003 (8th Cir. 2007).

In the present case, Favors has not demonstrated that his supervised release revocation has been reversed, expunged, or declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

While Favors did petition for federal habeas relief from his civil commitment at the MSOP, based on many of the same allegations alleged in the present action, Favors v. Jesson, No. 13-cv-108 (JRT/LIB), 2013 WL 4052668, at *1-2 (D. Minn. Aug. 9, 2013), he failed to have exhausted his state law remedies, and that Federal habeas petition was dismissed without prejudice. Id. at 5. In addition, Favors' habeas petitions before the state courts of Minnesota have also since been dismissed without any relief granted to Favors. (Order Partially Dismissing Habeas Pet. & Changing Venue, Ex. 48, [Docket No. 106-3], at 103-111; Ex. 1 to Kemp Affidavit, [Docket No. 243-1], 1-2). Accordingly, to the extent that Favors' claims, in order to be successful, would necessarily require the invalidation of the revocation of his supervised release and his subsequent incarceration at the DOC Minnesota Correctional Facility in Stillwater, Favors' claims are barred by Heck.

Favors argues that his claims are not barred by Heck, asserting that he is no longer incarcerated, that he is seeking equitable relief, and that his claims in any event challenge the procedures used to revoke his supervised release that lead to his subsequent incarceration in the Stillwater Correctional Facility.

However, the Eighth Circuit has rejected the argument that Heck does not apply to bar a claim once a plaintiff is no longer incarcerated. Newmy v. Johnson, 758 F.3d 1008, 1010 (8th Cir. 2014) ("Four other circuits, including this one, have adhered to the conclusion . . . that the [Heck] favorable-termination rule still applies when a § 1983 plaintiff is not incarcerated.").

The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, has already addressed Favors' other arguments that Heck does not apply to challenges seeking injunctive equitable relief and that the Heck does not preclude any claim

challenging a procedure.   In a previous Memorandum Opinion and Order, [Docket No. 277],

Judge Tunheim noted:

> the Supreme Court has expressly held otherwise. See Wilkinson v. Dotson, 544
> U.S. 74, 81-82 (2005) ("These cases, taken together, indicate that a state
> prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief
> sought (damages **or equitable relief**), no matter the target of the prisoner's suit
> (state conduct leading to conviction or internal prison proceedings) – **if** success in
> that action would necessarily demonstrate the invalidity of confinement or its
> duration." (first emphasis added)). Moreover, to the extent Favors challenges the
> procedures used by the defendants, he is wrong that Heck is uniformly
> inapplicable to procedural challenges. Instead, it bars challenges to procedures
> that, if invalidated, would "necessarily demonstrate the invalidity of confinement
> or its duration." Wilkinson, 544 U.S. at 82.

Mem. Opinion & Order, [Docket No. 277], 9 (emphasis in original).

Accordingly, Heck bars Favors' claims even to the extent those are construed to

challenge the procedures used at the supervised release revocation hearing and the appeal

therefrom, because in order for Favors to be successful it would by necessary for this Court to

find the revocation of Favors' supervised release and his resulting incarceration were invalid.

In determining the extent to which Heck bars Favors' claims, the undersigned previously

concluded:

> Certain of Favors' § 1983 claims against the State Defendants and Benson are not
> Heck-barred because they do not imply the invalidity of Favors' parole revocation
> and imprisonment . . . The allegations that do not implicate the Heck-bar are as
> follows: (1) perpetuation of "counter-therapeutic and dangerous environments"
> where defendants took no action to remove an employee from contact with MSOP
> patients "despite complaints and overwhelming circumstantial evidence" that the
> employee was having an inappropriate relationship with a patient, (Compl. ¶ 101);
> (2) depriving Favors of sex offender treatment and placing him in isolation at
> MSOP beginning June 10, 2010, (Compl. ¶¶ 233, 241); (3) holding Favors back in
> treatment, thereby prolonging his institutionalization, "to continue retaliation
> against him for filing this Complaint," (Compl. ¶¶ 326, 376); (4) "using
> Defendant Hoover's reports and allegations . . . as a pretext to exact their own
> retaliation . . . for filing complaints against these Defendants . . . for problems
> with these Defendants unrelated to Defendant Hoover), (see, e.g., Compl. ¶ 104,
> 114); (5) deprivation of a vocational work program based on discrimination and
> retaliation unrelated to Hoover, (Compl. ¶¶ 439-43); (6) restrictions from use of

18

recreation and education areas in MSOP violated his substantive due process rights, (Compl. ¶¶ 199-20, 447); (7) placement in HSA isolation and the Behavioral Therapy Unit (the "BTU") at MSOP without procedural due process, (Compl. ¶¶ 234, 248, 250, 376); (8) confiscation of legal materials in denial of access to courts, (Compl. ¶¶ 376); (9) deprivations of liberty interests related to conditions in HSA isolation, (Compl. ¶ 240, 363); and (10) deprivations of Fourth and Fourteenth Amendment rights based on searches and restraints used for security in transfers between units and between facilities, (Compl. ¶¶ 239-40, 246, 248-51, 294, 325, 330, 376).

(Report and Recommendation, [Docket No. 208], 19-20).

In addition, Favors raises claims that Defendant Schadegg and Defendant Peterson used improper procedures during the course of his revocation hearing and subsequent appeal, when Defendant Schadegg did not accept affidavits offered by Favors' counsel; when Defendant Schadegg allowed Michelle Hoover and Dianna Magaard to testify against him; when Defendant Schadegg based the revocation of his supervised release on false evidence; and when Defendant Peterson affirmed the decision to revoke Favors' supervised release allegedly on the belief that Favors' complaints against Hoover were false.

Even assuming that Favor's characterization of his claims against Defendant Schadegg and Defendant Peterson as procedural challenges is accurate, Judge Tunheim has made clear that even claims that challenge procedural aspects of a conviction or sentence are barred by Heck if the claims would, if proven, necessarily invalidate the sentence or conviction. (Mem. Opinion & Order, [Docket No. 277], 9 (citing Wilkinson, 544 U.S. at 82)). Accordingly, the Court concludes that Favors' claims that Defendant Schadegg based the revocation of Favors' supervised release on false evidence and that Defendant Peterson improperly affirmed Defendant Schadegg's decision on the belief that Favors' complaints were false, are Heck-barred.

3. Plaintiff's Claims against the DOC Defendants

a. *Defendant Fabian*

Favors does not allege any specific facts indicating that Defendant Fabian personally took any challenged action against Favors that was a part of his claims of (1) perpetuation of "counter-therapeutic and dangerous environments"; (2) depriving Favors of sex offender treatment and placing him in isolation at MSOP; (3) holding Favors back in treatment, thereby prolonging his institutionalization; (4) using Defendant Hoover's reports and allegations as a pretext for retaliation; (5) deprivation of a vocational work program based on discrimination and retaliation unrelated to Hoover; (6) restrictions from use of recreation and education areas in MSOP violated his substantive due process rights; (7) placement in HSA isolation and the BTU at MSOP without procedural due process; (8) confiscation of legal materials in denial of access to courts; (9) deprivations of liberty interests related to conditions in HSA isolation; and (10) deprivations of Fourth and Fourteenth Amendment rights based on searches and restraints used for security in transfers between units and between facilities. [11]

Rather To the extent that his claims are not <u>Heck</u>-barred, Favors conclusorily alleges that Defendant Fabian is liable for the challenged personal actions of the other Defendants because she: (1) is directly responsible for her failure to investigate his complaints; (2) was deliberately indifferent to the alleged violations of his civil rights; (3) conspired to allow the alleged violations; and, (4) supervised the individuals who personally violated Favors' rights.

---

[11] Favors does allege, in a conclusory manner unsupported by any specific facts that Defendant Fabian was personally involved in the alleged violations of his civil rights.  However, the Court is not required to accept such conclusory assertion as true. <u>Iqbal</u>, 556 U.S. at 664.

i.   *Failure to Investigate*

Favors' alleges Defendant Fabian was directly responsible for the alleged violations of his civil right because he sent Defendant Fabian his complaints about other individuals and that Defendant Fabian failed to investigate or otherwise act on those complaints.

To successfully allege a section 1983 claim based on an alleged failure to investigate, a plaintiff must allege specific facts showing that the alleged "failure to investigate was intentional or reckless, thereby shocking the conscience." Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012) (quoting Cooper v. Martin, 634 F.3d 477, 481 (8th Cir. 2011)). The Eighth Circuit has repeatedly held that a merely negligent failure to investigate does not allege a violation of a plaintiff's civil rights. Winslow, 696 at 732; Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009); Amrine v. Brooks, 522 F.3d 823, 833–34 (8th Cir. 2008). In fact, "[e]ven allegations of gross negligence would not rise to the level of a constitutional violation." Wilson v. Lawrence Cty., 260 F.3d 946, 955 (8th Cir. 2001).

Favors' allegations assert that he provided Defendant Fabian with what amounts to leads regarding Hoover's interactions with Crow and an account of events that was inconsistent with Hoover's description of those events. A mere failure to investigate leads or explore inconsistencies in evidence is not sufficient to allege recklessness that would shock the conscience. Hawkins v. Gage Cty., Neb., 759 F.3d 951, 957 (8th Cir. 2014). As such, even when weighed in the light most favorable to him, the evidence in support of Favors' claims against Defendant Fabian state, at most, a case of negligent failure to investigate. Accordingly, Defendant Fabian is entitled to summary judgment as a matter of law on Plaintiff's failure to investigate claim.

ii.   _Deliberate indifference_

Favors also conclusorily asserts that Defendant Fabian is liable for the challenged acts of the other Defendants as she was deliberately indifferent to his complaints.  In addressing Favors' claims with regard to the previously dismissed Defendants, Judge Tunheim explained that to be deliberately indifferent

> "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" [Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007)] (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Favors argues that his various complaints contained overwhelming evidence of Hoover's inappropriate relationship with Crow and that defendants' failure to take action sooner shows deliberate indifference or tacit authorization. (Objections at 10-11.) But Favors's many complaints, while compelling in hindsight, do not contain enough evidence to show a substantial risk of serious harm to Favors.

(Mem. Opinion & Order, [Docket No. 220], 22-23).

As Favors' conclusory allegations do not contain enough specific evidence to show a substantial risk of harm, Favors has not submitted evidence to support all of the essential elements of a deliberate indifference claim and Defendant Fabian is entitled to summary judgment as a matter of law on that claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (a plaintiff's "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and entitles the defendant to summary judgment as a matter of law).

iii.   _Conspiracy_

Favors also conclusorily alleges that Defendant Fabian conspired with the other Defendants to violate his civil rights.  To state a section 1985 claim of conspiracy to violate civil rights claim, a plaintiff must allege "(1) a conspiracy, (2) for the purpose of depriving another of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act

in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right." Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004) (internal quotation marks omitted). Civil rights conspiracy claims require "proof of a class-based animus." Id.

In assessing the conclusory allegations in Favors' Complaint with regard to his conspiracy claims against the previously dismissed Defendants, Judge Tunheim found that Favors had alleged only that the Defendants had acted in retaliation for his complaints, "not out of a feeling of animosity toward all sex offenders[,]" and that Favors had failed to provide any authority to support a claim that a sex-offenders as a group constitute a protected class protected by section 1985. (Mem. Opinion & Memorandum, [Docket No. 220], 31-32). Favors also fails to allege in other than a conclusory manner unsupported by specific facts that the Defendants actually arrived at a meeting of the minds to deprive him of his civil rights. See Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (holding that to show sufficient evidence of an agreement to violate civil rights, a plaintiff must allege specific facts tending to show a meeting of the minds among the alleged conspirators). Accordingly, Favors has failed to allege facts sufficient to create a question of material fact as to an essential element of his conspiracy claim and Defendant Fabian is entitled to summary judgment as a matter of law as to that claim. Celotex, 477 U.S. at 323.

iv.    *Supervision*

Favors also conclusorily alleges that Defendant Fabian supervised the individual Defendants whom he alleges personally violated his rights. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." Id. Plaintiffs must plead facts sufficient to support a defendant's personal involvement in the alleged unconstitutional act. See Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (allegations that defendants instituted policies that deprived plaintiff of property were insufficient where complaint did not identify the policies). Government officials may, however, may be held liable for their own failure to train or to supervise employees.

### Failure to Train

A government official may be liable under § 1983 for failure to train. Ambrose v. Young, 474 F.3d 1070, 1079 (8th Cir. 2007). A government official is liable if the plaintiff shows "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the government official] can reasonably be said to have been deliberately indifferent to the need." Id. at 1079-80 (quoting Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting, in turn, City of Canton v. Harris, 489 U.S. 378, 390 (1989))).

To the extent that Favors conclusorily alleges that Defendant Fabian failed to train Hoover, resulting in a constitutional injury to him, the claim must fail. There is no patently obvious need to train a security counselor in a civilly committed sex offender program not to engage in sexual relationships with a patient and then lie to cover it up. See Andrews, 98 F.3d at 1077 ("[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."). Even assuming Hoover's training was somehow deficient, the causation element is lacking. In a failure to train claim, "'the identified deficiency in . . . training . . . must be closely related to the ultimate injury' such that 'the deficiency in training actually caused the' . . .

offending conduct." Andrews, 98 F.3d at 1077 (8th Cir. 1996) (quoting City of Canton, 489 U.S. at 391). It is not plausible that lack of training caused Hoover to engage in a sexual relationship with a patient.  If lack of training made her believe the relationship was appropriate, there was no reason for her to lie to cover it up or retaliate against Favors for reporting it. Accordingly, Defendant Fabian is entitled to summary judgment on Favors' failure to train claim.

### Failure to Supervise

A government official may also be held liable for a failure to supervise "if the official 'demonstrated deliberate indifference or tacit authorization of the offensive acts.'" Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007) (quoting Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (citation and quotations omitted)). The subjective deliberate indifference standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). If the risk was obvious, a fact finder may conclude that the prison official knew of the substantial risk. Id. at 552.

Favors' conclusory supervisory allegations related to Hoover's inappropriate relationship with a patient fail because Defendant Fabian was not aware of a substantial risk of serious harm to Favors. Knowledge of a sexual relationship between a staff member and another patient did not pose a serious threat to Favors' health or safety, nor did it pose a serious threat to the success of his sex offender treatment. See generally Bailey v. Gardebring, 940 F.3d 1150, 1155 (8th Cir. 1991) ("A condition for which there is no known or generally recognized method of treatment cannot serve as a predicate for the conclusion that failure to provide treatment constitutes 'deliberate indifference to the serious medical needs of prisoners.'"). Accordingly, Defendant Fabian is entitled to judgment as a matter of law on that claim.

Based on the foregoing, the Court recommends **GRANTING** the DOC Defendants' Motion for Summary Judgment, [Docket No. 239], to the extent the motion pertains to Favors' federal claims against Defendant Fabian. The undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Favors' state law claims against Defendant Fabian.

### b.   Defendant King

To the extent that his claims are not <u>Heck</u>-barred, Favors' allegations against Defendant King consist <u>only</u> of a conclusory allegation unsupported by specific facts that Defendant King supervised the personnel who are responsible for the deprivation of Favors' civil rights.[12] The Court's analysis of the sufficiency of the evidence submitted by Favors with regard to the failure to train and failure to supervise claims against Defendant Fabian is equally applicable to the sufficiency of the evidence supporting his failure to train and failure to supervise claims against Defendant King. As such, the Court concludes that Favors has failed to submit sufficient evidence to raise a genuine question of material fact regarding the all of the essential elements of any of his claims seeking to impose liability on Defendant King for the personal actions of any other Defendant, and Defendant King is entitled to summary judgment as a matter of law on those claims. Accordingly, the Court recommends **GRANTING** the DOC Defendants' Motion

---

[12] As with regard to Defendant Fabian, Favors does not allege any specific facts indicating that Defendant King was personally involved in any of the actions on which he bases his claims of (1) perpetuation of "counter-therapeutic and dangerous environments"; (2) depriving Favors of sex offender treatment and placing him in isolation at MSOP; (3) holding Favors back in treatment, thereby prolonging his institutionalization; (4) using Defendant Hoover's reports and allegations as a pretext for retaliation; (5) deprivation of a vocational work program based on discrimination and retaliation unrelated to Hoover; (6) restrictions from use of recreation and education areas in MSOP violated his substantive due process rights; (7) placement in HSA isolation and the BTU at MSOP without procedural due process; (8) confiscation of legal materials in denial of access to courts; (9) deprivations of liberty interests related to conditions in HSA isolation; and (10) deprivations of Fourth and Fourteenth Amendment rights based on searches and restraints used for security in transfers between units and between facilities.

for Summary Judgment, [Docket No. 239], to the extent the motion pertains to Favors' federal claims against Defendant King.

The undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Favors' state law claims against Defendant King.

c.  Defendant Peterson

To the extent that his claims are not Heck-barred, Favors conclusorily alleges that Defendant Peterson is liable for the challenged acts of other Defendants, asserting that Defendant Peterson: (1) is directly responsible for his failure to investigate Favors' complaints; (2) was deliberately indifferent to his complaints; (3) conspired with the other Defendants who violated his civil rights; and (4) supervised the other Defendants who directly violated Plaintiff's civil rights. [13] [14]

i.  _Failure to Investigate_

Favors' alleges that he sent Defendant Peterson his complaints and that Defendant Peterson failed to investigate or otherwise act on them.  The Court's analysis with respect to the sufficiency of the evidence supporting Plaintiff's failure to investigate claims as to Defendant Fabian applies equally to the sufficiency of the evidence supporting Favors' failure to investigate claims against Defendant Peterson.  Accordingly, the Court concludes that Favors has failed to

---

[13] Favors does allege, in a conclusory manner unsupported by any specific facts that Defendant Peterson was personally involved in the alleged violations of his civil rights. The Court is not required to accept such conclusory allegations as true. Iqbal, 556 U.S. at 664.

[14] As with regard to Defendants Fabian and King, Plaintiff does not allege specific facts indicating the Defendant Peterson was personally involved in the actions on which he bases his claims of (1) perpetuation of "counter-therapeutic and dangerous environments"; (2) depriving Favors of sex offender treatment and placing him in isolation at MSOP; (3) holding Favors back in treatment, thereby prolonging his institutionalization; (4) using Defendant Hoover's reports and allegations as a pretext for retaliation; (5) deprivation of a vocational work program based on discrimination and retaliation unrelated to Hoover; (6) restrictions from use of recreation and education areas in MSOP violated his substantive due process rights; (7) placement in HSA isolation and the BTU at MSOP without procedural due process; (8) confiscation of legal materials in denial of access to courts; (9) deprivations of liberty interests related to conditions in HSA isolation; and (10) deprivations of Fourth and Fourteenth Amendment rights based on searches and restraints used for security in transfers between units and between facilities.

submit sufficient evidence to raise a question of material fact regarding all of the essential elements of his failure to investigate claim against Defendant Peterson and Defendant Peterson is entitled to judgment as a matter of law as to that claim. <u>Celotex</u>, 477 U.S. at 323.

ii.     *Deliberate indifference*

Favors also conclusorily asserts that Defendant Peterson is liable for the challenged acts of the other Defendants as he was deliberately indifferent to Favors' complaints. The Court's analysis of the sufficiency of the evidence supporting Favors' deliberate indifference claim against Defendant Fabian applies equally to the sufficiency of the evidence supporting Favors' deliberate indifference claim against Defendant Peterson.  Accordingly, the Court concludes that Favors has failed to submit sufficient evidence to raise a question of material fact regarding all of the essential elements of his deliberate indifference claim against Defendant Peterson and Defendant Peterson is entitled to judgment as a matter of law as to that claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.

iii.     *Conspiracy*

Favors' also conclusorily alleges that Defendant Peterson conspired with the other Defendants to violate his civil rights. The Court's analysis of the sufficiency of the evidence supporting Favors' conspiracy claim against Defendant Fabian applies equally to the sufficiency of the evidence supporting Favors' conspiracy claim against Defendant Peterson. Accordingly, the Court concludes that Favors has failed to submit sufficient evidence to raise a question of material fact regarding all of the essential elements of his conspiracy claim against Defendant Peterson and Defendant Peterson is entitled to judgment as a matter of law as to that claim. <u>Celotex</u>, 477 U.S. at 323.

iv.    _Supervision_

Favors conclusorily alleges that Defendant Peterson also supervised Defendant Schadegg, whom Favors' alleges personally violated his rights. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of _respondeat superior_." Iqbal, 556 U.S. at 676.   Rather, plaintiffs must plead facts sufficient to support a defendant's personal involvement in the alleged unconstitutional act. See Beck, 257 F.3d at 766 (8th Cir. 2001) (allegations that defendants instituted policies that deprived plaintiff of property were insufficient where complaint did not identify the policies).   Government officials may, however, may be held liable for their own personal failure to train or to supervise employees.

Failure to Train.

A government official may be liable under § 1983 for failure to train. Ambrose, 474 F.3d at 1079. A government official is liable if the plaintiff shows "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [the government official] can reasonably be said to have been deliberately indifferent to the need." Id. at 1079-80 (quoting Andrews, 98 F.3d at1076). To the extent the Favors claim is not Heck-barred and alleges that Defendant Peterson failed to train Defendant Schadegg, resulting in a constitutional injury to him, Favors fails to allege sufficient facts to raise a question of material fact whether there was a need for more or different training regarding the acceptance of affidavits or witness testimony at revocation hearings such that Defendant Peterson can reasonably be said to have been deliberately indifferent to the need.

Accordingly, Favors has failed to submit sufficient evidence to raise a question of material fact regarding all of the essential elements of his failure to train claim against Defendant

Peterson and Defendant Peterson is entitled to judgment as a matter of law on that claim. Celotex, 477 U.S. at 323.

Failure to Supervise.

A government official may also be held liable for a failure to supervise "if the official demonstrated deliberate indifference or tacit authorization of the offensive acts." Kahle, 477 F.3d at 550 (internal citation and quotation marks omitted). The subjective deliberate indifference standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer, 511 U.S. at 837).  If the risk was obvious, a fact finder may conclude that the prison official knew of the substantial risk. Id. at 552.

Favors' supervisory allegations with regard to Defendant Schadegg fail to raise a question of material fact regarding whether Defendant Peterson was aware of a substantial risk of harm, because they are premised on the contention that Defendant Peterson knew, at the time of the revocation hearing, that Hoover was actually involved in a sexual relationship with Crow such that there was a substantial risk of harm to Favors at the revocation hearing. However, "Favors's many complaints, while compelling in hindsight, do not contain enough evidence to show a substantial risk of serious harm to Favors." (Mem. Opinion & Order, [Docket No. 220], 22-23).  Accordingly, Favors has failed to submit sufficient evidence to raise a question of material fact regarding all of the essential elements of a failure to supervise claim against Defendant Peterson and Defendant Peterson is entitled to judgment as a matter of law on that claim. Celotex, 477 U.S. at 323.

Because Favors failed to submit sufficient evidence to raise questions of material facts as to essential elements of his claims seeking to impose liability on Defendant Peterson for the personal actions of the other individual Defendants, the Court recommends **GRANTING** the DOC Defendants' Motion for Summary Judgment, [Docket No. 239], to the extent the motion pertains to Favors' federal claims against Defendant Peterson.

The undersigned also recommends that the Court decline to exercise supplemental jurisdiction over Favors' state law claims against Defendant Peterson.

### d.   Defendant Schadegg

Favors alleges that Defendant Schadegg personally refused to accept into evidence affidavits his counsel offered at the revocation hearing and allowed false testimony to be admitted into evidence at the hearing.[15]   Favors also conclusorily alleges that Defendant Schadegg is liable for the acts of the other Defendants, asserting that Defendant Schadegg: (1) was directly responsible for her failure to investigate or otherwise respond to his complaints; (2) was deliberately indifferent to Favors' complaints; (3) conspired with other Defendants to violate his civil rights; and (4) supervised other Defendants who violated Favors' civil rights.   The DOC Defendants assert that Defendant Schadegg has immunity for her actions in her role as a Department of Corrections Hearing and Release unit hearing officer, and that Favors has, in any event, failed to submit sufficient evidence to support his claims against Defendant Schadegg.

---

[15] As with the other DOC defendants, Plaintiff does not allege specific facts indicating the Defendant Schadegg was personally involved in the actions on which he bases his claims of (1) perpetuation of "counter-therapeutic and dangerous environments"; (2) depriving Favors of sex offender treatment and placing him in isolation at MSOP; (3) holding Favors back in treatment, thereby prolonging his institutionalization; (4) deprivation of a vocational work program based on discrimination and retaliation unrelated to Hoover; (5) restrictions from use of recreation and education areas in MSOP violated his substantive due process rights; (6) placement in HSA isolation and the BTU at MSOP without procedural due process; (7) confiscation of legal materials in denial of access to courts; (8) deprivations of liberty interests related to conditions in HSA isolation; and (9) deprivations of Fourth and Fourteenth Amendment rights based on searches and restraints used for security in transfers between units and between facilities.

i.     *Immunity for actions taken in scope of activities as a hearing officer*

The DOC Defendants assert that Defendant Schadegg has immunity for Favors' claims against her for her actions in her role as a hearing officer.[16]

It is well established that judges are protected by absolute immunity for their judicial actions. Pierson v. Ray, 386 U.S. 547, 553-554 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."). The Supreme Court has extended that immunity to other government officials who perform quasi-judicial functions for acts performed within the scope of their quasi-judicial duties. Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) ("With this judicial immunity firmly established, the Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process.")

The Supreme Court has said that whether an individual has quasi-judicial absolute immunity is not determined by the individual's rank, title, or "location within the Government," but by the nature of the individual official's responsibilities. Cleavinger, 474 U.S. at 201-02 (citing Butz v. Economou, 438 U.S. 478, 510 (1978)). Courts look to a number of factors to determine whether an individual government official is entitled to quasi-judicial absolute immunity, namely: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." Id. at 202 (citing Butz, 438 U.S. at 512).

---

[16] In their Memorandum, [Docket No. 240], the DOC Defendants assert that Defendant Schadegg has both quasi-judicial absolute immunity and qualified immunity for her actions in her role as a hearing officer. Because the Court concludes that Defendant Schadegg has quasi-judicial absolute immunity for her actions in the scope of her role as a hearing officer, the Court need not reach the issue of whether Defendant Schadegg has qualified immunity for those actions.

Weighing evidence, making factual determinations, determining sanctions, and issuing written decisions are duties that are comparable in function to the duties of a judge. See Dunham v. Wadley, 195 F.3d 1007, 1011 (8th Cir. 1999) (affording absolute quasi-judicial immunity to veterinary examining board); see also Dixon v. Clem, 492 F.3d 665, 674 (6th Cir. 2007) (actions as a hearing officer of state administrative tribunal clearly taken in a judicial capacity). Indeed, the Eighth Circuit has held that a parole official, in deciding whether to grant, deny, or revoke parole, performs duties that are similar to a judge's duties and, as such, are entitled to quasi-judicial absolute immunity for those actions.  See Anton v. Getty, 78 F.3d 393, 396 (8th Cir. 1996).

A Minnesota Department of Corrections hearing officer presiding over a revocation hearing is required to take testimony, consider and weigh evidence, make factual findings, determine appropriate sanctions, including whether to revoke the alleged offender's supervised release, and issue oral decisions that are subject to appeal. (See Ex. 4 to Affidavit of Kobie Hudson, [Docket No. 242-1], 15-17). Those duties are closely analogous to the duties of the parole officer that the Eighth Circuit concluded was entitled to quasi-judicial absolute immunity. See Anton, 78 F.3d at 396. Accordingly, the Court concludes that Defendant Schadegg, as a DOC hearing officer is entitled to quasi-judicial absolute immunity for her actions within the scope of her duties as a hearing officer.

To the extent that Favors' allegations challenge Defendant Schadegg's decision not to accept the affidavits Favors' counsel offered at the revocation hearing and to allow Michelle Hoover and Dianna Magaard to testify at the hearing, those actions were taken in the scope of Defendant Schadegg's duties as a hearing officer. Accordingly, Defendant Schadegg has quasi-judicial absolute immunity to Favors' claims based on those allegations.

33

ii.     _Claims not based on activities within the scope of hearing officer duties_

To the extent that Favors' allegations can be favorably construed to challenge any of Defendant Schadegg's actions that were not taken as part of her duties as a hearing officer, Favors alleges that Defendant Schadegg is indirectly liable for the personal acts of the other Defendants, asserting that Defendants Schadegg: (1) was directly responsible for her own failure to investigate or otherwise respond to his complaints about other individuals; (2) was deliberately indifferent to Favors' complaints; (3) conspired with other Defendants to violate his civil rights; and (4) supervised other Defendants who personally violated his civil rights.

Direct Responsibility

Favors' alleges that he sent Defendant Schadegg his complaints and that Defendant Schadegg failed to investigate or otherwise act on them.  The Court's analysis with respect to the sufficiency the evidence supporting Plaintiff's failure to investigate claims as to Defendant Fabian and Defendant Peterson applies equally to the sufficiency of the evidence supporting Favors failure' to investigate claim against Defendant Schadegg. Accordingly, the Court concludes that Defendant Schadegg is entitled to summary judgment as a matter of law on that claim.

Deliberate Indifference

Favors also conclusorily asserts that Defendant Schadegg is liable for the challenged acts of the other Defendants as she was deliberately indifferent to Favors' complaints. The Court's analysis of the sufficiency of the evidence supporting Favors' deliberate indifference claims against Defendant Fabian and Defendant Peterson apply equally to the sufficiency of the evidence to support Favors' deliberate indifference claim against Defendant Schadegg. Accordingly, the Court concludes that Favors has failed to submit sufficient evidence to raise a

question of material fact regarding all of the essential elements of his deliberate indifference claim against Defendant Schadegg and Defendant Schadegg is entitled to judgment as a matter of law as to that claim. Celotex, 477 U.S. at 323.

Conspiracy

Favors' also conclusorily alleges that Defendant Schadegg conspired with the other Defendants to violate his civil rights. The Court's analysis of the sufficiency of the evidence supporting Favors' allegations with respect to his conspiracy claims against Defendant Fabian, and Defendant Peterson applies equally to the sufficiency of the evidence supporting Favors' conspiracy claim against Defendant Schadegg. Accordingly, the Court concludes that Favors has failed to submit sufficient evidence to raise a question of material fact regarding all of the essential elements of his conspiracy claim against Defendant Schadegg and Defendant Schadegg is entitled to judgment as a matter of law as to that claim. Celotex, 477 U.S. at 323.

Supervision

Finally, Favors conclusorily alleges that Defendant Schadegg also supervised the other Defendants who violated his rights. However, there is nothing in the record presently before the Court to indicate that Defendant Schadegg had any authority or duty to supervise any other Defendant.  As the Court has already concluded with respect to Defendant OHFC, supra, without a showing that Defendant Schadegg had the authority or a duty to supervise the other Defendants or investigate his complaints, Plaintiff cannot allege a section 1983 claim based on a failure to supervise or failure to investigate. See, e.g. Livers, 700 F.3d at 360 (duty to investigate);  Serna, 455 F.3d at 1154 (duty to supervise). Accordingly, the Court concludes that Defendant Schadegg is entitled to summary judgment as a matter of law as to Favors' failure to train and failure to supervise claims against her.

Based on all of the foregoing, the Court recommends **GRANTING** the DOC Defendants' Motion for Summary Judgment, [Docket No. 239], to the extent the motion pertains to Plaintiff's federal claims against Defendant Schadegg.

The Court also recommends declining to exercise jurisdiction over Favors' state law claims against Defendant Schadegg.

4. Dismissal with Prejudice

One final issue remains before the Court, whether to recommend dismissal of Favors' claims against the DOC Defendants with or without prejudice. Summary judgment is a ruling on the merits of the claims, on which a dismissal with prejudice is appropriate. See, e.g., EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1049 (3d Cir. 1993). Accordingly, the Court recommends dismissing Favors' claims against the DOC Defendants with prejudice.

IV.    **CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The DOC Defendants' Motion for Summary Judgment, [Docket No. 239], be **GRANTED**, as set forth above;

2. That Favors' claims against the DOC Defendants be **DISMISSED with prejudice**;

3. That Defendant OHFC's Motion to Dismiss, [Docket No. 246], be **GRANTED** as set forth above; and,

4. That Favors' claims against Defendant OHFC be **DISMISSED with prejudice**.


Dated: January 29, 2016                              s/Leo I. Brisbois
                                                     Leo I. Brisbois
                                                     United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.